## BROADWATER vs. DARNE.

1. Replevin will not lie for an injury to the bare possession of property—there must be a general or special property.

2. Drunkenness does not render a contract void. It only authorizes the party, or his representatives, to avoid it.

3. Although parol evidence is not admissible to alter or impeach a bill of sale of slaves, yet such evidence is admissible to shew that in pursuance of an understanding between the parties at the time of the obtaining the bill of sale, the slaves had been subsequently given, and possession of them delivered, so as to shew title in the donee.

## ERROR to Callaway Circuit Court.

LEONARD & HARDIN, *for Appellants.*

1st. The action of replevin is a proceeding *in rem,* and cannot be maintained unless the defendant be in possession of the property sought to be replevied at the commencement of the suit. 1 Chit. Plead. 185, §2, title "Replevin." Rev. Stat. title "Replevin." Doe, ex'r Ray, vs. Huntingdon, 6 East. Reps. 286. Sharp vs. Whittenhall, 3 Hill's Rep. 576.

2nd. The testimony offered by the defendant on the cross examination of plaintiff's witness, Thomas J. Minor, and rejected by the Court, was improperly excluded.

The gross inadequacy of the price, the fact that even this sum was only nominally paid, and that after the pretended sale, Broadwater denied to the plaintiff that he had ever sold him the slaves, and that plaintiff assented to this, taken in connection with the direct evidence that Broadwater was intoxicated when he signed the bill of sale, are all circumstances to show that the conveyance was obtained from a man deprived by drunkenness of the capacity of managing his affairs, while

the implied admission of plaintiff, that he never bought the slaves from Broadwater, was a direct contradiction of the fact upon which he relied for his title to the property.

3rd. The testimony of Mrs. Whaley, which the defendants offered and the Court rejected, ought to have been received.

Although not sufficient of itself to establish that plaintiff, after his brother-in-law's death, had surrendered to his sister and her children, this right to the slaves that he had acquired by the bill of sale, it was legal evidence for that purpose; it showed him to be under the strongest moral obligation to restore the slaves to his widowed sister and her children—and when taken in connection with his acknowledgement that the slaves belonged to them and not to him, was almost conclusive evidence of the fact.

4th. The evidence of John Scott, of plaintiff's acknowledgement that the slaves belonged to the defendant and her children, ought not to have been rejected.

The principal question in the issue was whether the slaves were the property of the plaintiff, and the plaintiff's direct admission that they did not belong to him, was here excluded.

5th. The plaintiff's 6th and 16th instructions are erroneous;—although one be in the peaceable possession of property and another wrongfully dispossess him, yet the first possessor cannot without right to the property, recover the possession from the wrong doer, by replevin,—to this action, property in the defendant, or even in a stranger, has always been a good plea, but if the plaintiff's doctrine be correct, it is no bar in all that class of cases where there has been a wrongful taking. Butcher vs. Potter, 1 Salk. 93. Harrison vs. McIntosh, 1 John. Rep. 380—384. Rogers vs. Arnold, 12 Wend. Rep. 30. Prosser vs. Woodward, 21 Wend. Rep. 205. Ingraham vs. Hammond, et al. 1 Hill's Rep. 339. Sharp vs. Whittenhall, 3 Hill's R. 576. Brown vs. Webster, 4 New Hamp. Reps. 500. Whitwell vs. Wells, 24 Pick. Rep. 25.

6th. The plaintiff's 9th and 11th instructions are also clearly erroneous.

7th. A contract entered into by a party so intoxicated as to be incapable of managing his affairs, is void, and the defendant's 3rd instruction ought to have been given. Chit. on Contracts, 139. Story on Contracts, 17 and 18. Fenton vs. Holloway, 1 Stark. Rep. 126. Pitt vs. Smith, 3 Camp. R. 33. Williams vs. Inabit, 1 Bailey's South Carolina Rep. 343. Reynolds vs. Waller, 1 Wash. Virginia Rep. 164. Arnold vs. Hickman, 6 Munf. Rep. 17.

8th. The defendant's 4th and 5th instructions ought to have been given.

9th. Fraud avoids all acts, and gross inadequacy of price is evidence of fraud, and upon this ground the defendants were entitled to their 6th and 7th instructions. Fermor's case, 3 Co. Rep. 77. Borden vs. Fitch, 15 John. Rep. 144.

10th. Under our statute, the defendant's plea put the plaintiff upon proof of his title to the property, and therefore the Court ought to have given the defendant's 8th instruction.

11th. The defendants 9th and 10th instructions assert what is admitted to be law, and there was evidence before the jury either of a gift or a sale of the slaves to the defendants, one or the other, and whether it was sufficient or not, was for the jury and not for the Court to decide.

## Todd, Ansell & Sheley, *for Defendant, insist:*

1st. That the action of replevin to recover possession of property will lie when the right to it is immediate, and if such right is proven, a perfect title to the property is not requisite. See Revised Code, title "Replevin."

2nd. The defendants to impeach the title presented by deed and delivery under it to plaintiff, must show themselves or one of them to claim as creditors to the maker, or as purchaser from the maker, or a personal representative as administrator, &c., or to have had paramount title before date of deed. Osborne vs. Moses, 7 Johnson R. 161. 4 Bibb, 65, 70. 16 John. 189. 1 Story, sec. 371. 2 Littell, 12. Statute, title, Fraud, Conveyances.

3rd. That a tortious taking or detainer, without either of such titles, forbade the defendants from any defence against the deed of plaintiff so as to permit a recovery by them on the score of

title or possession. 7 Johnson, 140. 3 Wend. 280. 14 John. Rep. 84. 8 John. Rep. 432. 1 Wend. 109. Marshall vs. Davis, 12 Wend. 30. Rogers vs. Arnold, 3 Hill, 348. Barrett vs. Warren, 1 Hill, 302. Ash et al. vs. Putnam.

4th. The sale of the negroes from Broadwater to Darne, being evidenced by deed, it cannot be impeached, changed, explained or contradicted by parol evidence. 2 Starkie, 544. Title " Parol Evidence," and notes. Morris vs. Morris, 2 Bibb, 311. Cozens vs. McGee, 2 Bibb, 321. Greenleaf's Evidence, title " Parol," 327. See Rev. Statutes, Frauds, &c. Parol evidence can only be introduced to show fraud in the execution of the instrument. Inadequacy of price is not sufficient to avoid a deed. 1 Story, sections 244 to 7. Chitty on Contracts, 7 and 8. Burrows and another vs. Alter and another, 7 M. R. 434. Dorr vs. Munsell, 13 John. R. 430. Dale vs. Roosevelt, 9 Cowen, 307. 1 Littell, 62. Chitty on Contracts, (new ed.) 412.

5th. To avoid a deed on account of drunkenness of maker, he must have been so drunk at the time of the execution of the deed, that he did not know what he was doing. 1 Story, section 230 to 232, and notes. 2 Kent's Com. 452, and notes. Campbell vs. Ketchum, 1 Bibb, 406. 6 Munford Rep. 15. 8 Vesey, 12. 2 Starkie, 326, title " Drunkenness."

6th. The defendants are mere trespassers without color of title, and the verdict is for the right party, and this Court will not reverse for error committed by Court below.

SCOTT, J., *delivered the opinion of the Court.*

This was an action of replevin for six slaves, instituted by Darne against Margaret Broadwater and her son J. S. Broadwater, (the appellants,) in the Callaway Circuit Court, in September, 1844. The declaration contained two counts, one for an unlawful taking, and the other for an unlawful detention of the slaves. The cause was tried upon the general issue at the April Term, 1845, when the plaintiff (the appellee,) had a verdict and judgment, from which the defendants have appealed to this Court.

Upon the trial, the plaintiff claimed the slaves under a bill of sale, dated in Virginia on the 25th February, 1825, from Wm. E. Broadwater, the husband of Margaret Broadwater, and father of John S. Broadwater, the defendants and appellants, purporting to have been given in consideration of $400 paid by the plaintiff, and gave evidence that Wm. E. Broadwater resided in Virginia until 1830, when he died; that Margaret Broadwater, who was the plaintiff's sister, went with her children to reside with him in 1825, after the execution of the bill of sale; that in 1833, she and her children removed with the plaintiff to this State, and resided with him until 1840, when they went to reside on a farm by themselves, taking with them some of the slaves embraced in the bill of sale. It was proved that the slaves went to, and remained with Darne after the execution of the bill of sale, and that his possession continued. Margaret Broadwater resided with her brother until 1840; the slaves in controversy were in possession of Darne until about the 1st May, 1844,

when they left his service and were found at the house of Mrs. Broadwater. The Sheriff testified that in May, 1844, a search warrant was placed in his hands by Darne, the plaintiff, to search for the slaves sued for on the farm of Mrs. Broadwater. That he went and found the slaves in Mrs. Broadwater's house, above stairs, and brought them to the Court House of Callaway County, before Squire Overfelt, by whom the search warrant had been issued—that the search warrant was dismissed, and then a writ of replevin was put in his hands, and was served on the negroes at the Court House; he took the slaves to his house, where they now are and have been—the defendant, J. S. Broadwater, his mother being from home, delivered up the slaves under the search warrant. Darne and his counsel informed the Sheriff that they did not like the first writ of replevin, and that they would dismiss it and issue another. The first writ was served on the 3rd June, 1844, and was dismissed on the 16th September following; on the next day a second writ was placed in his hands, and it was served on the slaves then in his possession.

Upon the cross examination of one of plaintiff's witnesses, the defendant offered to prove that the $400, pretended to have been paid for the slaves embraced in the bill of sale, was not one-fourth of their value,—that the plaintiff never paid this consideration, and that some time after the execution of the bill of sale, Broadwater declared in plaintiff's presence that he had never sold him the slaves, to which the plaintiff assented. This evidence was objected to by the plaintiff, and rejected by the Court, to which exceptions were taken.

The defendants then went into their case and offered in evidence the deposition of Mrs. Whaley, and read from it evidence that she saw plaintiff on his way to Broadwater's; that he said he was going there after Broadwater's slaves—and that she saw him again on his return home with the slaves in Broadwater's wagon, with their beds, clothing, &c.— That two or three weeks afterwards, Mrs. Broadwater went to the plaintiff, and after a short time returned again to her husband. That some of the slaves were then with her, and under her control, and others of them were hired out;—that Mrs. Broadwater lived with the plaintiff from August 1825 till 1840, and acted as his house-keeper, and that plaintiff generally consulted with her about hiring out and disposing of the slaves in controversy. The defendant then offered to read from this deposition evidence that the plaintiff informed deponent that his sister, Mrs. Broadwater, told him, when she was down in the District of Columbia, (where he resided,) that her husband was scarcely ever sober,— that he managed his business so badly that she was afraid that she and

her children would come to want;—that he advised her to go home and make some arrangement with her husband, to have the slaves secured to her and her children, and to write to him if she could affect any thing; that she did write, and he borrowed $400, and purchased the slaves with it; that he, and Mr. and Mrs. Broadwater talked the matter over, and it was agreed that the plaintiff should take the slaves and keep them for the benefit of Mrs. Broadwater and her children; that the bill of sale was accordingly executed, and plaintiff got back his money, Mrs. Broadwater placing it where he could get it, and that he exchanged this money for other money, so that Mr. Minor, from whom he had borrowed it, might not recognize it. This evidence was excluded by the Court, and exceptions were taken.

The defendants then introduced John Scott as a witness, and gave evidence by him, that the plaintiff, some time in 1825, and shortly after the execution of the bill of sale, told witness that Broadwater was not sober when he executed it, that he was always drunk, and that there was no such thing as doing business with him. Broadwater lived fifty or sixty miles from the District of Columbia, and had but few slaves—that in August, 1825, Mrs. Broadwater and her children went to reside with plaintiff, and continued with him until 1840—that she and plaintiff frequently consulted with one another about the slaves.

The defendant asked this witness what plaintiff said to him after the execution of the bill of sale in relation to the ownership of the slaves, which was rejected,—they then asked the witness whether the plaintiff at any time after the execution of the bill of sale, told witness to whom the slaves belonged, which was also rejected. They then offered to prove, by the witness, that the plaintiff acknowledged to him, after the execution of the bill of sale, that the slaves in controversy belonged to the defendant and her children, which was also rejected.

Testimony of a like character to the foregoing, from other witnesses, was also offered and rejected by the Court.

The plaintiff then offered the sixteen following instructions:—

1st. If the jury believe from the evidence that W. E. Broadwater executed and delivered the bill of sale for the slaves mentioned therein read in evidence, to hinder, delay or defraud the creditors of said Broadwater, then said bill of sale is binding and obligatory on said W. E. Broadwater, his heirs, and distributees.

2nd. If the jury find from the evidence that Wm. E. Broadwater made, executed and delivered the bill of sale given in evidence, and that the slaves therein mentioned were delivered up to the possession of Simon

Darne under said bill of sale, then said bill of sale is to be taken as containing the true contract between Broadwater and Darne, and it is not competent for the defendants in this action to vary, alter or contradict the terms of said bill of sale by parol evidence.

3d. If the jury find from the evidence that Wm. E. Broadwater, previous to and at the time of the execution of the bill of sale, given in evidence, was the owner of Prince, and also of Judy, and that the plaintiff received the possession of said slaves, and held them under a claim of right from said Wm. E. Broadwater, and that while he held them, Fanny, Jim, Joe and Murry were born, children of said Judy, and that Wm. E. Broadwater, during Darne's possession, died intestate, then the defendants had no right by law, as the heirs and distributees of said Wm. E. Broadwater, without administering on his estate, to take possession of the slaves in controversy, without and against the knowledge or consent of the plaintiff.

4th. To avoid the bill of sale given in evidence, on the alleged ground of Wm. E. Broadwater's drunkenness, at the time of its execution, the jury must be satisfied from the evidence that the alleged drunkenness existed at the time of the execution of said bill of sale, and incapacitated him from understanding and doing his ordinary business.

5th. That if the jury find that Wm. E. Broadwater was drunk when the bill of sale to the plaintiff was made, yet, if afterwards he affirmed the sale of the negroes while sober, it is no cause to invalidate such sale.

6th. If the jury find from the evidence that the plaintiff, prior to the suit, was in peaceable possession of the slaves in controversy, and afterwards the defendants, or either, disturbed that possession, by tortiously taking the slaves into their possession, without the plaintiff's consent, and withheld the slaves from the plaintiff at the time of bringing this suit, they will find for the plaintiff.

7th. If they so find, they may give for damages for the loss of the services of the slaves from such taking to this time.

8th. Although the jury may give simple damages for the loss of service of the slaves, they may further give exemplary damages for the tort and wrong committed.

9th. If the jury find that the plaintiff held possession of the slaves, under Wm. E. Broadwater, with his consent, and he owned them before delivery to the plaintiff, and he died before the tort of the defendants, they cannot in this suit, under any claim of right under Broadwater, as his representative, deny the execution of the bill of sale to the plaintiff,

they neither being executor or administrator of said Broadwater, deceased.

10th. If the claim of defendants to the slaves is derived from Wm. E. Broadwater, under the contract of sale to the plaintiff, then they cannot deny the execution of the instrument.

11th. If the claim of the defendants is adverse to the plaintiff, and they claim under a good title to them, in William E. Broadwater, before his death, then they must prove a contract of gift or sale to them, from Broadwater, deceased, or the plaintiff in writing, or a parol contract of gift or sale from one of those parties, and an actual delivery under such contract, to defeat the plaintiff's recovery.

12th. There is no evidence in this cause that they, the defendants, are creditors of Wm. E. Broadwater, so as to enable them to impeach the plaintiff's bill of sale.

13th. There is no evidence in this cause that the defendants are purchasers from W. E. Broadwater, after or before the plaintiff's bill of sale from Broadwater, and they cannot on that ground impeach the execution of the plaintiff's bill of sale.

14th. There is no evidence in this cause that the defendants are such personal representatives of Wm. E. Broadwater, deceased, as to be allowed in this cause, on such ground, to impeach the plaintiff's bill of sale.

15th. There is no evidence in this cause that the plaintiff, after his purchase of Wm. E. Broadwater, by deed in writing, gave or sold the slaves in suit to the defendants, or either, neither is there any evidence that after such sale, he, by a parol sale or gift of them, or any of them, delivered under it to the defendants, or either of them, any of the slaves in dispute.

16th. If the jury find a tortious taking of the slaves in question by the defendants, or either of them, from the plaintiff, from his peaceable possession, they cannot defend themselves under this action under any title, but are bound to restore the possession, and set up such claim by the usual legal remedies, and cannot justify their possession by their own tortious taking and withholding the possession from the plaintiff.

All of which were given, but those numbered 10, 12, 13, 14, and 15, to the giving of which the defendants excepted.

The defendants then asked the ten following instructions:

1st. If the jury believe, from the evidence, that neither of the defendants were in the possession of the slaves sued for, or any of them, at the commencement of this suit, that the jury ought to find their verdict for the defendants.

2d. That the plaintiff cannot recover in this action unless the jury are satisfied from the proof, that the plaintiff, at the commencement of this suit, was entitled to the possession of the slaves sued for, and that the defendants wrongfully took them from the plaintiff, or wrongfully detained them from him.

3d. That if the jury believe that Wm. E. Broadwater was so drunk, at the time of his executing the alleged bill of sale, given in evidence by the plaintiff, as to be incapable of managing his affairs, that the sale is void and of no effect, and transferred to the plaintiff no right to the slaves or to the possession thereof.

4th. If the jury believe from the evidence that the plaintiff, after the alleged execution of the bill of sale, given in evidence by the plaintiff, abandoned to Margaret Broadwater, or her children, the title thus acquired, that in that event the jury ought to find for the defendants, unless they believe the plaintiff afterwards acquired a new title from Mrs. Broadwater, or her children, or those claiming under them.

5th. That it is the province of the jury to determine, from all the evidence before them, whether the plaintiff did, in fact, abandon to Mrs. Broadwater, and her children, all right to the slaves in controversy, acquired under the alleged bill of sale.

6th. If the jury believe from the evidence that the alleged bill of sale was obtained by the plaintiff, from Wm. E. Broadwater, by fraud, the same is void, and vested no title to the slaves in the plaintiff.

7th. Gross inadequacy of price is one circumstance, if the jury believe it exists in the alleged sale, by Wm. E. Broadwater to the plaintiff, from which with other circumstances they may infer that the said sale was fraudulent and void as against Wm. E. Broadwater.

8th. The plaintiff cannot recover in the present action without showing to the satisfaction of the jury, a right to the slaves sued for at the time of the commencement of this suit, even although they may believe that the title is not in the defendants.

9th. A sale of slaves is valid without any deed, bill of sale, or other writing evidencing the same.

10th. A gift of slaves is valid without any deed or other writing evidencing the same, provided such slaves came to the possession of the donee, and it is the province of the jury to determine from all the evidence whether there was any such gift.

All of which were refused by the Court, but that numbered two, to which the defendant excepted.

The first question raised is as to the right of the plaintiff, in replevin,

to maintain his action against one who is not in the possession of the pro-· perty to be replevied.  In the case of English vs. Dulbrow, 1 Miles 100, it was held that in replevin the writ should issue against the person having at the time the actual possession of the goods claimed.  In Bacon 5, 71, it is said that if one takes beasts by the command of another, the replevin may be brought against him who actually takes, or the commander only, as trespass may be.  So in Leigh's Nisi Prius, it is laid down that the action of replevin lies as well against the party who directs the taking of the goods as against the party who has actually taken them, or against both of them jointly.  2, 1325.  What is the effect of such a defence? The simple denial by a defendant that he did not take or did not detain the property of the plaintiff, laying aside all considerations of ownership in himself, would be nothing more than the finding of the issue of *non cepit* at common law in his favor; if nothing more appeared in a case, that would not entitle a party to a return of the property.  If, on a trial, under the issue prescribed by our statute, the defence should simply be that the property was not taken nor detained by the defendant, and no evidence was given of any property or right to the possession in him, and the plaintiff should be defeated in his action by such a defence, would the Court award a return of the property, or an assessment of damages, in such a case?  Would not such a defence be tantamount to a disclaimer of all ownership or right to the property?

The 6th and 16th instructions are complained of as giving incorrect views relative to the nature of the interest in property necessary to main-· tain the action of replevin.  The books say that replevin will lie where trespass *de bonis asportatis* lies.  In 3d Hill, Sharp vs. Whittenhall, 576, it is said that this rule is not universally true.  Possession is *prima facis* evidence of the ownership of personal property, and will enable one to maintain an action for an injury to such property when no better right is shown.  The possessor is deemed the owner, and that presumption stands for him against all the world until the right of another is shown.  It would seem that the bare possession of property, without right, will not sup-· port replevin.  How can the defence of property, in a stranger, prevail if a bare possession alone will support the action?  It is not pretended that an action will not lie for an injury to one's possession, or that the law confers no protection upon such rights.  All that is intended to be said is, that replevin will not lie for an injury to the bare possession, when the property is shown to be in another.  There must be a right to the pos-· session, coupled with a special or general property.

Mrs. Broadwater does not claim the slaves in privity to her husband;

she is not his administratrix or his executrix; she has not shown herself in a situation to entitle her to avoid the contracts of her husband, neither is she a creditor or purchaser; the instructions concerning drunkenness are beside the case; drunkenness does not render contracts void, so that the world may avail itself of it as a defence; it only makes them voidable, and the defence can only be set up by the party himself, or his representatives. Story on Contracts 18. Then there could be no error in giving or refusing instructions on this subject; evidence of the fact was properly admitted, on account of its importance in establishing the right set up by Mrs. Broadwater; but she has no right to insist on it as avoiding her husband's contracts.

There is no doubt about the correctness of the general principles contended for by the counsel of the appellees, that parol evidence is inadmissible to vary a written instrument, or to impeach the consideration of a sealed instrument; but these principles will not warrant the exclusion of the evidence of which the appellants complain. It is only necessary to state the foundation of Mrs. Broadwater's claim to the slaves in order to be convinced of the propriety of such evidence; with the weight of that evidence this Court has nothing to do, its relevancy is our only concern. Mrs. Broadwater, being apprehensive of coming to want from the dissipated habits of her husband, consulted with her brother as to the means by which she could save some of his property for herself and children; it was advised that her brother should obtain a bill of sale for the slaves in his own name; that is accordingly done; the consideration expressed bears but little proportion to the value of the slaves, and the sum pretended to have been paid is placed so as to enable the purchaser to obtain it again, so that, in fact, nothing was paid for the slaves; the slaves are delivered to Darne, and his sister with her children, go to live with him. Now, the object of Mrs. Broadwater is to show that her brother has done that which, as she supposed, he ought to have done; that he has given her the slaves; that he surrendered to her the legal title vested in him by the bill of sale, and that he had abandoned the ownership to her; for this purpose all the evidence excluded by the Court was proper, and its exclusion is error. In case of a sale of a slave or a gift, where possession accompanies it, no writing is necessary. The veil may not be entirely lifted from this transaction, but from what appears of it, by the record, I do not think the conduct of Mrs. Broadwater very censurable; she was prompted by the strongest feeling of her nature, love for her offspring, to secure something for them from the fate which the unfortunate habits of her husband threatened his estate. If a pious

fraud can be committed, that surely was one. This evidence, under this view of the subject, was admissible; with its weight we have nothing to do; whether it made out the plaintiff's claim, was a question solely for the jury.

This is not a case in which the Court can take upon itself to say that the judgment is for the right party; that may be, but as it was a case for the jury, and as evidence offered by the plaintiffs, tending to make out claim, has not been weighed nor considered, we think it proper that an opportunity be afforded them for that purpose.

The other Judges concurring, the judgment will be reversed, and the cause remanded.