Williams v. Soutter et al.

## WILLIAMS *v.* SOUTTER, *et al.*

By pleading over and going to trial, a party waives his demurrer.

An action against S. & D., as partners, for goods sold and delivered.    To prove the partnership, the plaintiff offered in evidence, with other facts, an agreement between S. and one W. of the one part, and D. of the other part, wherein D. agreed to furnish S. & W. $2,000, to be employed in business, carried on by said S. & W. for twelve months, on the condition, that at the expiration of that time, the said D. should receive the said $2,000, with thirty per centum per annum, or one-third of the profits accrued from the business, deducting all business expenses, if desired by him, and that the said D. should not be expected to take an active part in the business.    *Held*, That, with the other facts connecting D. as a partner, the evidence was admissible.

I n an action against partners, where the plaintiff desires to show the retirement of one, and the admission of another partner, a letter from one of the partners to a person with whom the firm was doing business, stating that the writer had purchased the interest of one of the partners, is admissible.

Where a cause is heard by the court, instead of a jury, exceptions may be taken to the admission or rejection of testimony.

It is error to permit a witness to state his opinion as to whether certain persons were partners.

An action against S. and D. as partners.    S. made default, and before the calling of any witnesses, the court, on motion of the plaintiff, ren-

Williams v. Soutter et al.

dered judgment against him by default, but did not then assess the plaintiff's damages. During the trial, and after the plaintiff had closed his testimony, D. demanded that the issues made by him might be tried separately, which was refused; *Held*, 1. That the application for a separate trial was made too late; 2. That practically, D. did have a separate trial.

A person sued as a partner, against whom a judgment by default has been rendered, but against whom the plaintiff's damages have not been assessed, nor any *final* judgment rendered, is not a competent witness, to prove that his co-defendant never was a partner.

In an action against a copartnership by a creditor, the declarations of one of the partners, made while the firm was in existence, and before any difficulty arose between the partners, are admissible in evidence to show that one of the persons sought to be charged, was not a member of such partnership.

It is clearly erroneous to admit hearsay testimony.

An agreement by which one party binds himself to furnish another a certain sum of money, to be used in a certain business for twelve months, upon the condition that at the expiration of that time, he shall receive the same sum of money, with thirty per centum per annum, or one-third of the profits accrued from the business, after deducting all business expenses, if desired by him, is but a contract for loan of money, and does not, of itself, constitute a partnership.

The assignee of an open account, in order to recover in an action in his own name, must show that the assignment of the account was made in writing.

Where an objection to a deposition does not go to its form, or manner, nor to the competency of the answers of the witness, but to the legal sufficiency of the testimony, it may be made upon the argument of the cause, and after the deposition has been read to the jury.

## *Appeal from the Scott District Court.*

### WEDNESDAY, JANUARY 19.

Williams sued Soutter & Drew for the price of goods sold and delivered from August 1st to November 4th, 1854. Williams had previously been in partnership with one Taylor, and part of the goods were sold and delivered by this firm of Williams & Taylor. On the 4th of October, 1854, Williams bought out the interest of Taylor, including the goods notes and accounts of the firm. After this dissolution, Williams alone sold the remainder of the goods.

The facts in relation to the defendants, are these: Soutter was in partnership with one Wray, at the time the goods were sold. On July 27th, 1854, Wray retired, and it is claimed that Soutter purchased his interest. On the 14th of March, 1854, an agreement was entered into between Drew, on the one part, and the said Soutter and Wray on the other part, the substance of the whole of which was, that Drew "agreed to furnish the parties of the second part, with two thousand dollars, the money to be employed in the business carried on by said Wray & Soutter, for twelve months, subject to the following conditions: That at the expiration of that time, the said Drew shall receive the said two thousand dollars, with thirty per cent. per annum, or one-third of the profits accrued from the business, deducting all business expenses, if desired by him, at the expiration of twelve months from the above date. And further, that said Drew shall not be expected to take an active part in said business." This is signed by Wray & Soutter and Drew.

Upon the strength of this agreement, and other evidence, it is contended that Drew was a partner in the firm, at the time of the sale of the goods. The questions made, appear in the opinion of the court. Both parties appeal.

*Corbin & Dow*, for the plaintiff.

*Cook, Dillon & Lindley*, for the defendants.

WOODWARD, J.—The better manner of treating this cause, will be to state the errors assigned, with the facts pertaining to each, separately, and thus to consider each by itself. The defendants' assignments are first taken up.

The error first assigned by him, is the overruling his demurrer to the plaintiff's amended petition. The plaintiff also assigns as error the overruling his amended petition. On account of the want of dates to the copies of some papers, and to the total absence of a transcript of any record

entries, we are unable to determine whether these a~~ign-
ments do not relate to one and the same matter.  '~ ~ey
appear to do so.   And we can only say that, as has been
often held, the defendant waived his demurrer by pleading
over and going to trial, if it was overruled, which see~~~
doubtful.   All substantial causes of action can be reacl. .~~
by instructions asked, rulings on the evidence, or by mc~w~ .
in arrest and for a new trial.   As to the plaintiff's po.~~ .
tion, if his amendment, made in accordance with the de-
fendant's demurrer and the decision of the court, was
ruled out, this was error,.   But the record is not clear.

The error secondly assigned is, that the court permitted
the plaintiff to read in evidence an agreement between
Drew on the first part, and Soutter & Wray on the second
part.   A copy of the substance of this agreement is given
in the statement of the case.   It is not now a question
whether that contract constituted, by itself alone, a co-part-
nership between these three persons.   Admitting that it
did not, yet was it not admissible?   If no other evidence
were offered, connecting with it, it would not, under the
above assumption, be receivable.   The counsel argues the
question rather as if the paper stood alone, but there was
other matter shown which, connected with that, might give
it effect.   Thus, his acts and declarations, or either of them,
might be added, to give a meaning and effect to it, which it
would not be entitled to, when standing alone.   We can-
not shut our eyes to the fact, that such other evidence was
introduced.   So that we cannot think there was error in
receiving the paper, in the actual circumstances, whatever
might be our view of it, were it not accompanied by such
other proofs.   It was, at least, one fact in a series, to which
others might give meaning and weight.

The third error, as is claimed, relates to the admission
in evidence of the copy of a letter, written by Soutter to
one Miller, dated August 23d, 1854.   It is a request that
Miller send certain goods therein named.   He says he had
before made some purchases of Miller, at which time he

(Sout er), was in partnership with Wray, but that he had since then purchased Wray's share of the business, and that he was then at the same stand, alone.    The plaintiff claims the admission of this, for the single purpose of assisting to show that Wray had retired from the firm.    His f s were to show Soutter and Wray in partnership; then to connect Drew with them; then to prove Wray's retirement; and finally Drew's continuance with Soutter. These several objects were legitimate, and the letter was competent, as tending to show the facts proposed.

The fourth error assigned, is to the following matter: The plaintiff introduced one Davie, as a witness, who testified that he knew the parties; that he resided in Davenport in the years 1854 and 1855, and was employed as a clerk in the banking house of Cook & Sargent; that Wray & Soutter kept an account there up to the 27th of July ,1854; and that on the 5th of August, 1854, the balance was drawn by a check signed "Wray & Soutter," and was transferred to the account of Soutter alone. Whereupon plaintiff asked the witness this question: "At the banking house of Cook & Sargent, was it understood, about the month of January, 1855, that Soutter had a partner?"  This question was objected to, and the objection overruled, and the witness permitted to answer, which he did by stating, in substance,that he did know what Cook & Sargent thought, as he heard them say nothing about it; neither did he ever hear either Soutter or Drew say anything; but his opinion was, that Soutter & Drew were partners.    Both the question and answer were again objected to, but the court ruled that the question was proper, and the answer was given.

If this question alone was not improper, the answer given was manifestly so.    It was opinion, alone, without a fact to sustain it.    If it be said that the testimony was offered to the court, and not to a jury, the answer is, that the court was sitting as a jury, and that the testimony thus received, is presumed to be received as competent; or, if the court admits the question, in order the better to judge

of. the propriety of the matter, from the answer; or if it permits the evidence to be introduced at the first, in order to consider of its propriety afterward, there should be some subsequent indication of the decision—the ruling thereon should be made known. In the present instance, the question was admitted; and when the answer is given, and objection is again made, reaching to both question and answer, the exception is still overruled, and the court makes no qualification of the matter in the final announcement of its finding and conclusion. We do not know how the inference can be avoided, that the evidence was held competent; and as a consequence, that the court took it into consideration, with the remainder of the proof.

The case of *Weems* v. *George*, 13 How., 197, is referred to, for the purpose of showing that exceptions cannot be taken to the admissionor rejection of testimony, when the cause is heard by the court instead of the jury. In the courts of the United States, there is no such system, upon this subject, as that adopted by our law. With us, all causes are tried by the court, unless a jury be demanded. The court, if requested, is to state in writing the facts found, and his conclusions of law thereon, and the parties may except to matters occurring during the trial, as well as to the final decision, as has heretofore been practiced, so far as the nature of the case permits. The case in Howard, shows the ground upon which it was decided. The opinion says : " When the case is submitted to the judge, to find the facts, without the intervention of a jury, he acts as a referree by consent of parties." This places it upon the common law, and independent of such a statute as controls here. We think there was error in receiving this testimony.

The fifth assignment embraces two points. *First*. That the court refused a separate trial to the defendant, Drew. It appears that Soutter made default, and that, before the calling of any witnesses, on motion of the plaintiff, the court entered his default, and rendered judgment against him as of default, but did not then assess the plaintiff's

damages. It then appears, that during the trial, and after the plaintiff had closed his testimony, Drew demanded and requested of the court, that the issues he had made might be tried separately, and apart from the other defendant, Soutter, which was refused by the court. If there was any meaning in this motion—if it amounts to anything—it was clearly too late. The plaintiff had closed his evidence. But there was no issue to be tried between Williams and Soutter. The latter had made default, and judgment thereon had been entered, and the only thing remaining was to assess the damages, in which the principal question involved was, for what sales the plaintiff could recover in this action, with reference to the mode of the assignment of the open accounts. To all practical intents and purposes, the defendant, Drew, did have a separate trial.

But the second and main point in this assignment is, that upon the refusal of the above motion, Drew moved that the court would assess the plaintiff's damages against the said Soutter, and upon the refusal of this, the said Drew called the said Soutter, and offered him as a witness to prove that Drew was never a partner of Soutter, and that they never acted upon, nor recognized the agreement of March 14th, 1854, as having any force after Wray sold out to Soutter; and the counsel stated that said Soutter was offered for no other purpose than the above, and was not offered to deny or dispute the account sued upon. The court ruled that the witness was not admissible.

This presents a question exceedingly similar to that in *Danforth, Davis & Co.* v. *Carter & May*, 4 Iowa, 230, of which we give a synopsis. Danforth, Davis & Co. sued the firm of A. W. Carter & Co. for goods sold. A. W. Carter was dead, and they sued John O. Carter and Samuel E. May, as the surviving partners. May admitted that he was a partner, but John O. Carter denied that he was. The only question on the trial was, as to J. O. Carter being a partner. May offered to permit the plaintiff to take judgment against him—he made no defence. On the trial,

under these facts, John O. Carter offered the testimony of May to show that he (J. O.) was not a partner. The district court held May to be incompetent, he being a party to the record. This court held that he was admissible. The reasoning of the court may be abbreviated: "It is true that May is a party to the record, and is liable for debt and costs; but, by giving judgment, he takes these upon himself absolutely, so that they are subject to no contingency arising from his testimony, and he is interested to throw a part of the burden upon John O. He has no interest, then, but that against the party calling him. He gives judgment, and that is all the plaintiff can ask against him. But does the plaintiff say his action is against the two jointly, and that if he fails to obtain judgment against both, he can have it against neither? This objection is answered by May giving judgment against himself. He cannot make the objection; the record stops him. The objection of interest, therefore, and the technical one relating to the plaintiff's rights, are obviated, and the question comes to this, simply: Whether he is incompetent, as being a party to the record? If a case can be found where a party to the record has absolutely no interest, or where it is all against the party calling him, why should he not be permitted to testify?" And the court held that May was a competent witness.

Now, wherein does the present case differ from that? There is one essential point. Soutter has made default, but he has not offered judgment to the plaintiff under all circumstances, and whatever the result may be, as to Drew. And, therefore, as the action is joint, and the plaintiff must make out his case against Drew, or fail as to both, if the court should find that Drew was not a partner, it could not render final judgment against Soutter. Herein Soutter still stands interested to defeat the action; therefore, we think the court did not err in rejecting the testimony. See *Burt* v. *Barber*, 3 T. R., 27, and the American note to that case, in 2 Smith's Leading Cases, 74, 88, 90 and 117.

Under the sixth alleged error, the following question

arises : The defendant, Drew, offered one Whistler as a witness, to prove certain declarations of Soutter, made early in the spring of the year 1855, as to Drew being a partner with him. This subject, too, is discussed in the case of *Danforth, Davis & Co.* v. *Carter* and *May, supra.* It was there sought to show that John O. Carter was a partner. A. W. Carter, an admitted partner, had deceased. The defendant, John O., offered testimony of declarations of A. W. as to his (J. O.), being one of the firm. This court held the testimony competent, under qualified circumstances. It is said, in substance, "that this is one of those questions, the answer to which is variable, dependent upon the position of the cause, and the relation of the parties. If there was a controversy among the partners, the declarations of none of them could be given on the side of their interest, upon the question, who were, or who are not partners. But here is the case of creditors suing a firm for the recovery of their debts. Here, the declarations of a party charged, cannot be received to prove that he was not a partner; whilst they may be, to show that he was. On the other hand, the testimony or declarations of one are not ' receivable to make another, one of the firm, and so to charge him. But why should not the declarations of the other members, made whilst the firm was going on smoothly, before any question or difficulty arose, be received, to show that one was not a partner. Take, for instance, the representations of A. W. Carter, when in Boston purchasing goods, and when asked who constituted the firm which wished to buy goods, and obtain a credit. It is true that his representations as to who were interested, would not bind those he named, though it would himself; but would it not be competent—that is, admissible—to show who were not interested." The court considered such testimony admissible, under proper circumstances, as indicated in the above quotation.

In the present instance, the circumstances, so far as they appear, are, that the witness had known Wray and Soutter ; and knew of the former selling out to the latter ; and

that the declarations were made two or three months before Soutter sold out, which last fact would indicate that it was before any difficulty arose between Soutter and Drew, and before the creditors began to press upon them; and it was at a time when Soutter was opening an invoice of goods just received. Upon the whole, we should think the affairs were going on quietly and smoothly, and that there was as yet no difficulty, and that the declarations were receivable. But too little is shown to warrant us in pronouncing this an error. What is here said, is with a view to a new trial, ordered upon any other ground, and in view of the intimation that there are other similar causes pending against the same defendants.

We pass to the eighth assignment. This relates to the testimony of E. Cook, banker, with whose house Wray and Soutter first, and afterward Soutter, kept a bank account. It would require too much space to set this forth in detail, but the nature of it, with the objection, and the error complained of, may be shown by giving the substance of the error assigned. The defendant alleges that the court erred in overruling his objection to, and admitting the testimony of Cook, as to whom the house of Cook & Sargent supposed they were dealing with, &c. Also, in overruling objection, and permitting Cook to testify what Davie, (one of his clerks), remarked to him, concerning the supposed partnership. Also, in permitting Cook to testify what he had supposed as to the partnership of defendants, from declarations of Davie, and a letter written by Davie, based on statements of defendant, Soutter; and in ruling out a question of defendant, as against whom Cook & Sargent enforced their claim, and whether the same was yet paid.

It was clearly erroneous to admit this testimony of Cook. It was only hearsay, and a part of it hearsay at second hand. It was not even reputation. And the question of the defendant was equally improper. If it be urged that this was to the court only, we refer to what is said on this point, under the fourth assignment.

The seventh error alleged by the defendant, relates to the refusal of the court to recognize as law, and adopt in his decision, the propositions of the defendant, numbered from three to nine, inclusive, which propositions were in the nature of instructions.    They relate to the nature and effect of the contract of March 14th, 1854.    The leading object and point of them all, is expressed more pointedly in the propositions numbered five and six, which are, in substance, that the said contract, so far as relates to Drew, is not an agreement of partnership, but only an agreement stipulating or providing a compensation to him, for the use of money, and does not, of itself, make Drew a partner.    The court did not adopt these propositions as law, but, on the other hand, held that by this agreement, the said Drew became a silent or dormant partner, with Soutter & Wray, at least as to third persons, and that it was not a loan, but a contribution to the capital stock of business for twelve months.

In this decision, we think the court erred.    We will not attempt to enter into a full discussion of this subject, for it has been amply treated and illustrated in the cases and the elementary books, some of which will be referred to, so that probably nothing need be added.    Nothing more is called for, than that the court should declare to what class of cases the contract referred to belongs.

We feel quite clear, that the contract in question does not, of itself, constitute a partnership.    We view it at first, and for the moment, as if it contained no alternative —as if Drew was to take one-third of the profits.    The question, what facts, or what agreements constitute a partnership, often leads, there is no doubt, to nice distinctions and refinement of thought, one of the most delicate of which is that of profits, considered as profits, or otherwise.    Story on Part., secs. 33, 36.    But we need not enter into these.

The contract of March 14th, 1854, is one for the loan and use of money, with one rate and mode of compensation provided absolutely, and another left optional with the

lender. There appears to us no good reason, why one may not furnish money upon the like terms that others may supply labor, service, skill, judgment, or material, without becoming partners. The present case falls within that class where one has no interest in the capital stock—no rights as a partner—where no mutuality of power, of duties, rights and responsibilities exist. Story on Part., sec. 32. It is similar to the case where one rendering labor or service, or some material, is to receive a given sum out of the profits, or a proportion of profits, or a residuum of the profits beyond a certain sum, as compensation. It is like receiving the rent of a tavern or farm, by a portion of the profits. No one thinks a landlord a partner, who receives a third of the crop for the use of his farm. It is not so strong as the case of *Reed* v. *Murphy*, 2 G. Greene, 574, in which Reed was to receive one dollar absolute, and one-fourth of the profits, for the use of his store-room, and he was to devote all his time and attention to the business of the other party. See *Price* v. *Alexander*, 2 G. Greene, 427. And wherein does the case of money differ from that of factors, brokers, and other agents, who receive as compensation for their services, a proportion of the profits? It is not so strong an instance as that of *Loomis* v. *Marshall*, 12 Conn., 69, and that of *Turner* v. *Bissell*, 14 Pick., 192, which are commented upon in Story on Part., secs. 45, 46. In *Vanderburgh* v. *Hall*, 20 Wend., 70, one was to contribute his services in conducting the business of an iron foundry, and was to receive three hundred dollars and one third of the profits, while the other party was to furnish all the stock. Wherein do these services differ from the defendant's money? Some of the cases put in the books are of money furnished.

In the case at bar, moreover, there was no holding out to the world, either in intention or in fact, by words, acts, or any conduct which might operate to the deception of third persons.

Again: So far as the intention of the parties may have

weight, it seems to our minds, manifest that the parties to this contract intended only a loan. Drew is to have his money again absolutely, and not subject to the state of the partnership affairs. Not all losses, but "the business expenses" only, are to be deducted—and, finally, it does not appear to us proper to omit the fact, that he is not to have the one third profits, certainly, but the thirty per cent. is fixed certain, and the alternative of one-third profits, is left to his subsequent election or choice; and it would seem that, all other considerations aside, he would not become a partner until he had elected to take the profits. Until then, how can it be said that he receives a third of them? His power to choose does not determine it. This freedom of choice is to his advantage, but it does not bind him.

According to our view, therefore, there was error in the refusal to adopt the law substantially, as expressed in the defendant's fifth and sixth propositions, and in the first conclusion of the court, and in the other conclusions dependent upon the first, for the law expressed therein.

The ninth assignment of error, relates to the findings of the court, numbered from one to ten, inclusive, and to the conclusion of law from the facts, numbered from one to six inclusive, but excepting number five. We see no reason for an exception to the greater part of the facts found, as some of them do not even constitute a question in the cause. But it is not our intention to comment upon the facts found, nor to express any opinion relative to their presentation here. The leading questions of the case arise from the conclusions of law drawn by the district court. Of these, the controlling one was, that Drew was a partner, and therefore liable. As the decision of the court was, that the contract of March 14th, 1854, of itself, made Drew partner; and as we cannot know what would have been the other conclusions, without this as a basis, it is unnecessary to consider those others, but the disposition of the first one is all that is required.

The tenth assignment is based upon a motion to set aside the verdict, or the findings of the court, and to arrest

the judgment, and to grant a new trial. This motion is based upon the same matters and alleged errors which we have been considering above, and therefore, it requires no further attention.

It has been stated above, that both parties appeal. We have been considering the errors complained of by the defendant, Drew, and we come now to those assigned by the plaintiff.

The error alleged by the plaintiff, rests upon the decision of the court, as to the extent of his recovery. The plaintiff sues upon an open account, for goods sold and delivered, a part of which were sold by the firm of Taylor & Williams. Williams afterward bought out Taylor's interest in the goods, notes and accounts. The question made, arises upon the assignment of the accounts. The plaintiff offering evidence of his demand against the defendants, introduced the depositions of one N. F. Osterhand and J. F. Cook. On the point here made, one of these witnesses, (who were clerks of the plaintiff), says: "Williams purchased all Taylor's interest in the goods, notes and accounts." The other says: "Williams purchased all Taylor's interest in the goods, notes and accounts of the concern"—meaning the firm of Taylor & Williams. The plaintiff's bill of exceptions shows that there was no objection made to these depositions by the defendants, or either of them, but that they were admitted, read, and became part of the evidence in the case; and that upon the argument, and then for the first time, defendant insisted to the court, that judgment could not be rendered for the plaintiff, for the value of the goods sold by Taylor & Williams, but only for the value of those sold by Williams alone.

The statute of Iowa, (Code, section 952), renders open accounts assignable, so that the assignee may maintain an action upon them in his own name. But the case of *Andrews* v. *Brown*, 1 Iowa, 154, determines that such assignment must be in writing. This was the objection to the proof in the case at bar. But the plaintiff maintains, that

Williams v. Soutter et al.

the objection was of such nature that it should have been made before trial.  The court held the objection proper, and that there was no proof of such an assignment of the account, as to enable the plaintiff to recover in his own name.  We do not think the court erred.  The objection was not to the form, or manner of the deposition, nor to that of an interrogatory, or an answer; nor was it to the competency of the answer.  What there is in the deposition, is proper in manner, and is admissible; but the exception is, that it does not prove enough—that it does not go far enough.  It was proper that the plaintiff should prove the assignment of the accounts, but he needed to show further, that they were assigned in such a manner that he could maintain the action in his own name.  To enable him to do this, it was requisite to show that they were assigned in writing, and because the testimony did not do this, the defendant objected to its legal sufficiency.  It is not an exception to the deposition, or to the question, or the answer, but it is an argument upon the sufficiency of the proof.

The objection in *Kimball* v. *Cook*, 1 Gil., 424, was to the broadness and generality of the answer, as stating the final conclusion of the witness, without any facts.  But this point in that case, is not free from doubt.  The interrogatories are not given, and it may have been the duty of the other party to question the witness, in order to get at the facts and details.

The judgment of the district court is reversed.

[End of Cases decided at the December Term, A. D. 1858.]