BOSTON & COLORADO SMELTING COMPANY *vs.* WILLIAM T. SMITH *et als.*

Agreement under seal between A. and B. by which B. was to loan A. $5,000 for one year, or indorse his note for that amount for that time, and also indorse his notes to an additional amount not exceeding $2,000 if B. thought such sums required for A.'s business. For this A. was to pay B. ten per cent. of his net business profits of the year, and two per cent. of his net profits for each $1,000 indorsed for him over said sum of $5,000. A. also agreeing to conduct his business to the best advantage, and to keep accurate accounts thereof to be at all times open to B.'s examination:

*Held,* an executory agreement which if carried into effect would make A. and B. copartners neither as between themselves nor as to third persons.

*Held,* further, that the lenders having no voice in the management of the business and no interest in the capital, the agreement was for a loan of money or credit in which a percentage of profits took the place of interest.

*Held,* further, that such a contract did not, according to the later English cases, create a partnership at common law.

A. brought *assumpsit* against B. and others whom A. claimed to be copartners of B. for goods furnished them under a sealed agreement executed by A. and B.

*Held,* that the action would not lie. As against B., A.'s claim rested on a specialty, and as B. alone could not be made liable in *assumpsit,* so B. in company with others could not be held in *assumpsit.*

*Semble,* that if a partnership existed between B. and his co-defendants, the partners who did not execute the sealed agreement could only be reached by a bill in equity filed by A.

ASSUMPSIT. Heard by the court under the following agreement:

"In this cause it is stipulated and agreed as follows:

"That the following questions be submitted to the court:

"*First.* Whether or not the agreement between Mason, Chapin & Co. and William T. Smith, marked Exhibit A, is evidence of a copartnership between said Mason, Chapin & Co. and said William T. Smith.

"*Second.* Whether or not, in view of the agreement under seal, signed by the plaintiff and the defendant, William T. Smith, marked Exhibit B, an action of *assumpsit* can be maintained against the defendants as for goods sold and delivered to them as copartners, if such goods are the same goods contracted for in said agreement.

"In case the court should decide, under the second question, that an action of *assumpsit* cannot be maintained, then the plaintiff shall become nonsuit.

"EDWIN METCALF, *Attorney of Mason, Chapin & Co.*"

"THURSTON, RIPLEY & CO., *Plaintiff's Attorneys.*"

Exhibit A above referred to is recited in the opinion of the court.

Exhibit B is as follows :

" Memorandum of agreement made and entered into this first day of May, A. D. 1878, by and between the Boston & Colorado Smelting Company, party of the first part, and William T. Smith, of Providence, R. I., party of the second part, witnesseth : That the said party of the first part hereby agrees to sell and deliver, and by these presents does sell, to said party of the second part five eighth ($\frac{5}{8}$) parts of the entire product of oxide of copper produced at their works in Colorado, from the first day of September, A. D. 1878, to the first day of September, A. D. 1880, the same not to exceed twenty-five (25) tons per month, and to be delivered, free of expense, in car loads of about ten (10) tons each, at the railroad depot in Providence. And the said party of the second part hereby agrees to purchase, and by these presents does purchase, five eighth parts of the oxide of copper produced at the works of the party of the first part, from September 1st, A. D. 1878, to September 1st, A. D. 1880, not exceeding twenty-five (25) tons per month, hereby agreeing to pay for each shipment within ten (10) days from the date of its arrival at Providence."

[Then follow provisions for determining the prices to be paid, and respecting damage in transportation, not material to the questions submitted.]

" This agreement shall take effect on the first day of September, A. D. 1878, and be binding upon the parties hereto, their successors and assigns, until the first ʟday of September, A. D. 1880.

" In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

                    " BOSTON & COLORADO SMELTING Co.

                          By J. Warren Merrill, *Treasurer*.    [L. s.]

                    "WM. T. SMITH.    [L. s.]

" In presence of H. E. VALENTINE.

"Witness : WM. P. CHAPIN."

*May* 29, 1880.   DURFEE, C. J.   This is an action of *assumpsit* for goods sold and delivered by the plaintiff corporation to the defendants, who are alleged to have been copartners in business

at the time of their delivery. The names of the defendants are, first, William T. Smith, and, second, certain persons constituting the firm of Mason, Chapin & Co., to wit: E. Philip Mason, William P. Chapin, Charles S. Bush, and Samuel L. Peck. Two questions, one of which may be decisive of the case, are submitted to the court for determination, preliminarily to the full trial. The first is, whether the following agreement between the defendant, William T. Smith, and the other defendants, is evidence of a copartnership between them.

" This indenture, made this twenty-fifth day of April, in the year eighteen hundred and seventy-eight, between William T. Smith, of Providence, in the State of Rhode Island, of the first part, and Mason, Chapin & Co., of the said Providence, of the second part, Witnesseth: That in consideration of the agreements herein made, the said party of the first part covenants with the said parties of the second part, that on the first day of May, in the year eighteen hundred and seventy-nine, he will pay to them ten per centum of the net profits of the business, carried on during the year preceding the day last named, under the name and style of 'Elmwood Chemical Works, William T. Smith, Treasurer,' in consideration of their loan to him of $5,000, or of their indorsements for him to that amount, for and during the year aforesaid, and will also pay to them two per centum of said net profits for each sum of one thousand for which they may indorse for him during said year in addition to said sum of $5,000 ; and that he will conduct said business during said year to the best advantage, and keep accurate accounts thereof upon books which shall be at all times open for examination by them.

" And that the said parties of the second part, in consideration of the foregoing agreement, covenant with the said party of the first part: that they will loan to him $5,000 for the term of one year, from the first day of May, eighteen hundred and seventy-eight, or indorse his note for that amount, renewable from time to time during said term, and will also during said year, if in their judgment required for the proper management of his business aforesaid, indorse his notes to an amount not exceeding $2,000 in excess of said $5,000.

"In witness whereof, the said parties hereto set their hands and seals, the day and year first above written.

"Executed in presence of    ) WILLIAM T. SMITH,        [SEAL.]
EDGAR G. ROBINSON,          )
Witness to both signatures. ) MASON, CHAPIN & Co.    [SEAL.]"

The contract, it will be noted, is executory, and of course does not create a partnership between the parties to it until something is done to carry it into effect. We presume, therefore, that the meaning of the question put to us is, Is the contract such that it would create a partnership between the parties to it, if carried into effect according to its terms, or such that, if so carried into effect, it would render the parties to it liable as copartners to third persons? We will consider the question as if so propounded.

If we regard the contract simply as a contract between the parties to it, to be construed as contracts are usually construed, so as to carry out their intention, we think there can be no doubt that it can only be considered a contract for a loan of money or credit in consideration of a percentage of profits in lieu of interest. It gives the lenders no voice in the management, and no interest in the capital, of the business. It gives them only a percentage of the profits for a single year in a continuing business. It is true they are to have the right to inspect the books, but only for information. The contract calls the business *his, i. e.* the borrower's, and it remains exclusively his, as much during the continuance of the loan as before or afterwards. The contract, as between the parties to it, is, therefore, simply a contract for a loan of money or credit, and if, when carried out, it renders them liable as copartners, it is not because they have agreed to become such, but, independently of their agreement, by force of an arbitrary or artificial rule, or by operation of law.

The plaintiff corporation contends that the members of the firm of Mason, Chapin & Co. have, by sharing or being entitled to share the profits of the business carried on by Smith, become, if not actual copartners with him, at least liable with him as copartners to third persons for the debts contracted by him in the prosecution of his business.

The position taken by the plaintiff corporation has the support

of the earlier English and of numerous American decisions, and, previous to the decision of *Cox* v. *Hickman* in the House of Lords, in 1860, was so well established that Judge Story, in his work on the Law of Partnership, while he questions whether it would not have been "more conformable to true principles, as well as public policy, to have held that no partnership should be deemed to exist at all, even as to third persons, unless such were the intention of the parties, or unless they had so held themselves out to the public," declares, nevertheless, that "the common law has already settled it otherwise," and that "therefore it is useless to speculate upon the subject." Story on Partnership, § 36. The ground of the doctrine was that a person who shares the profits ought to share the losses, because he takes a part of the fund out of which the losses are to be paid. But the ground will not bear examination; for, in point of fact, the losses are no more payable out of the profits than out of the capital, and in other cases it has been decided, quite inconsistently with this ground, that it is only a participation in the net, not the gross, profits, which makes the participant a *quasi* partner. Other grounds, but none more satisfactory, have been suggested. Indeed, the doctrine, though well received by some judges, appears to have been always regarded by others as an anomaly or legal solecism. It was soon relaxed in favor of agents or servants, who, it was held, might take a share of profits by way of compensation for their services without becoming *quasi* partners. The English courts, however, refused to extend the exception to cover a loan of money, though upon principle it is impossible to discern any difference whether a portion of the profits goes to pay for services or for money contributed to the business. Mr. Lindley, in his excellent work on Partnership, suggests that this difference of decision was owing to the statutes against usury, because in many cases a loan of money for a share of profits could only be upheld by regarding the lender as a partner. Lindley on Partnership, 3d ed. 23–25.

Such was the state of the law, as it was generally understood, or, to put the matter as some of the later English judges prefer to put it, as it was generally *mis*understood, when, in 1860, the House of Lords decided the case of *Cox* v. *Hickman*, 8 H. L. 268. The gist of that decision was that a mere participation in profits

does not make the participant a partner unless he has in fact agreed to become such, but is only *primâ facie* evidence that he is such, and is rebuttable by counter-proof to be found in the contract or transaction or in the circumstances connected with it. The real question is, it was held, Did the person who is sought to be charged on account of his participation in the profits ever enter into the relation of copartner with the other participant, or, in other words, do they participate on the common footing of principals in the business? And, in explication of the question, it was said that the law of partnership is a branch of the law of agency, inasmuch as, wherever an actual partnership exists, the partner who ostensibly carries on the business does it for himself and as agent for his copartners; or, to put the matter in another form, he and they carry it on through him on their joint account, so that in law, on the principle of agency, whatever he does in the prosecution of the business they do, and whatever debts he contracts they contract with him. In *Holme* v. *Hammond*, L. R. 7 Exch. 218, 230, it is stated that the import of the opinions delivered in the House of Lords in *Cox* v. *Hickman* is correctly summed up by O'Brien, J., in *Shaw* v. *Galt*, I. R. 16 C. L. 375, thus: "The principle to be collected from them appears to be, that a partnership, even as to third parties, is not constituted by the mere fact of two or more persons participating or being interested in the net profits of a business; but that the existence of such partnership implies also the existence of such a relation between those persons as that each of them is a principal and each an agent for the others."

The doctrine promulgated in the decision of *Cox* v. *Hickman* has been developed and applied in England in many subsequent cases, and may now be regarded as established law in that country. *Bullen* v. *Sharp*, L. R. 1 C. P. 86; *Holme* v. *Hammond*, L. R. 7 Exch. 218; *Mollwo, March & Co.* v. *The Court of Wards*, L. R. 4 P. C. 419; *Pooley* v. *Driver*, L. R. 5 Ch. Div. 458; *Ex parte Tennant*, L. R. 6 Ch. Div. 303, the substance of which is stated in *Hart* v. *Kelley*, 83 Pa. St. 286, 290; Lindley on Partnership, 3d ed. 35–47. The doctrine has likewise been laid down or approved in many American cases. *Hart* v. *Kelley*, 83 Pa. St. 286; *Harvey* v. *Childs & Potter*, 28 Ohio St. 319; *Smith* v.

*Knight,* 71 Ill. 148 ; *In re Francis,* 2 Sawyer, 286 ; 7 Nat. Bankr. Reg. 259 ; *Williams* v. *Soutter,* 7 Iowa, 435 ; *Polk* v. *Buchanan,* 5 Sneed, 721 ; *In re Ward & Co.* 8 Reporter, 136 ; *Richardson* v. *Hughitt,* 76 N. Y. 55. Indeed, it has been maintained that the American cases, generally, have never gone to the same extent as the earlier English cases. *Eastman* v. *Clark,* 53 N. H. 276.

Some of the cases above cited are stronger than the case at bar. *Bullen* v. *Sharp* is such a case. In *Mollwo, March & Co.* v. *The Court of Wards,* the borrower agreed to carry on the business, *subject to the control of the lender in several particulars,* and to pay the lender twenty per cent. of the profits until the advances were repaid with twelve per cent. interest, and yet it was held that no partnership was created, the primary purpose being security for the loan. In *Polk* v. *Buchanan,* the lender was to have one fourth of the net profits for his accommodations, which were to continue for two years, and to have the product of the business placed under his control, and yet he was held not to be a partner. In *Williams* v. *Soutter* it was held that a loan of two thousand dollars, to be repaid at the expiration of a year, with interest at the rate of thirty per cent., or one third of the net profits of the business, did not make the lender a copartner with the borrower. In *Cox* v. *Hickman,* Lord Chief Baron Pollock supposes, as a case in which a partnership would clearly not exist, the case of a loan to be repaid by the application of one half the profits as they might arise, the lender to have the power to see that the profits were applied. If these cases are law, we do not see how it can be held that a copartnership would result from carrying out the contract in the case at bar.

In *Pooley* v. *Driver,* L. R. 5 Ch. Div. 458, 474, 488, there was an agreement by the recipients of the accommodation to carry on the business " to the best of their ability." The court relied on this, in connection with other features of the contract, to show that a partnership was in reality created under the cover of a loan. For the law will not tolerate any evasion, but wherever the agreement creates as a matter of fact the relation of partnership, no mere words to the contrary will prevent, as regards third persons, its having its legitimate consequences. *Ex parte Del-*

*hasse*, L. R. 7 Ch. Div. 511. In the case at bar, however, we find no reason to suspect any latent design to create a partnership under the disguise of a loan; for though there is here, as in *Pooley* v. *Driver*, an agreement on the part of the borrower to carry on the business to the best advantage, we do not think it affords any inference that a partnership was intended, for it is scarcely more than the law itself would require, namely, that the borrower shall conduct with good faith, and it is certainly less significant than the stipulations given in some of the cases above cited. And see *Ex parte Tennant*, L. R. 6 Ch. Div. 303. The lenders make it a condition of the loan that the borrower shall carry on the business to the best advantage, because they are dependent on him, the business being *his* and *not theirs*.

The plaintiff contends that there is a distinction between an agreement for participation and actual participation, and that while the former may be only *primâ facie*, the latter is conclusive, evidence of partnership. · We do not find that the distinction is well founded in either reason or precedent. It certainly is not well founded if partnership is a fact dependent on agreement, and not a mere matter of legal imputation, and, as we understand the current of modern decision, it is such a fact; and the only case in which a person, who is sought to be charged as a partner, is precluded from proving the actual fact, is when he has held himself out, or permitted himself to be held out, as a partner.

The plaintiff also contends that, inasmuch as participation in profits, if not conclusive, is at least *primâ facie* evidence of partnership, it is for the jury to say whether the defendants are partners or not. This may be so if there is testimony, outside the contract and its execution, going to show the existence of a partnership. But if there is no such outside testimony, if all that the members of the firm of Mason, Chapin & Co. have done is to carry the contract into effect according to its terms, then the question is wholly for the court; for nothing done in execution of the contract could create a partnership unless the contract is itself a contract for a partnership, and whether it is or not, it being in writing, is simply a question of legal construction.

The Roman law and the modern foreign law, Judge Story

says, do not create partnerships, as to third persons, between parties, without their consent; and therefore, he adds, the common law appears to have pressed its principles to an extent not required by, if it is consistent with, natural justice.    Story on Partnership, § 37.    If Judge Story were living to-day, he would doubtless rejoice to find that the common law, as expounded by the highest judicial tribunals in England, does not diverge from the Roman and modern foreign law, nor from natural justice, so widely as he had inferred from the earlier English cases.    It is certainly a great advantage to have the law in harmony with natural justice.    A law that no person can share in the profits of a business without becoming liable as a partner for its losses is not such a law, for it subjects men, without any fault on their part, to liabilities, as if by contract, which they never contracted.    In this State there is no reported decision which is inconsistent with the later English cases, and we think the later English cases are to be accepted as the truest and most authoritative exposition of the common law.

Taking then the first question to be as previously stated, namely: would the contract, if carried into effect according to its terms, make the parties to it copartners, or render them liable to third persons as copartners?    We answer it in the negative.

The second question arises thus.    The action is *assumpsit* for goods sold and delivered.    The goods were sold by contract under seal, executed May 1, 1878, by the plaintiff and the defendant Smith, and were subsequently delivered under it.    The contract purports to be simply the individual contract of Smith with the plaintiff.    The defendants contend that *assumpsit* cannot be maintained.    The question is, Can it be maintained?

Ordinarily an action of *assumpsit* does not lie for money due on a contract under seal so long as an action can be maintained on the specialty.    *Gilman* v. *School District,* 18 N. H. 215; *Clendennen* v. *Paulsel,* 3 Mo. 230; *Brown* v. *Gauss,* 10 Mo. 265; *Young* v. *Preston,* 4 Cranch, 239; *Pierce* v. *Lacy,* 23 Miss. 193; *Hawkes* v. *Young,* 6 N. H. 300; *Wilson* v. *Murphey,* 3 Dev. 352; *Shack* v. *Anthony,* 1 M. & S. 573; *Evans* v. *Bennett,* 1 Camp. 300, 303, note.    The reason is because *assumpsit* lies only on simple contracts, and when a contract by specialty exists, all

simple contracts of the same purport are merged in it. If, therefore, the action' were against Smith alone, we think it clearly could not be maintained, and of course it cannot be maintained against him and others unless they were copartners with him. The question is, then, can it be maintained against him and others if they were his copartners? There is in our opinion an insuperable obstacle to it. For if he is not liable individually in *assumpsit* because he is liable on his contract under seal in the higher form of action, how can he be liable jointly with others; the cause of action, which originally came into existence under the contract under seal, remaining always one and the same? We do not see how he can, consistently with the rules of pleading or with the rule that the same cause of action cannot exist at the same time as a simple contract and as a specialty. It is only in case the contract under seal could be regarded as collateral to an implied contract on the part of all the defendants that the action could lie, but it cannot be so regarded because it is itself the original or principal contract, and being express leaves no room for any contract by implication. *Banorgee* v. *Hovey*, 5 Mass. 11; *Kimball* v. *Tucker*, 10 Mass. 192; *Blume* v. *McClurken*, 10 Watts, 380; *Eames* v. *Preston*, 20 Ill. 389. The plaintiff has cited numerous cases, of which the three following are most in point: *Cram* v. *Bangor House Proprietary*, 12 Me. 354; *Van Deussen* v. *Blum*, 18 Pick. 229; *Fagely* v. *Bellas*, 17 Pa. St. 67. In the first of these cases the contract was for the benefit of a corporation, but was signed and sealed by its agents with their own names and seals. It was held that an action of *assumpsit* would lie against the corporation, which had received the benefit of the contract. The court appear to treat the sealed contract as if it were not binding either on the corporation or its agents, and if this was so, the decision was right beyond any question. Moreover the action was against the corporation alone, and not against any person who signed the contract under seal. In the second case the action was debt, not *assumpsit*. The declaration contained, besides a special count on the contract, general counts for work done and materials furnished, and the court permitted the plaintiff to recover on the latter counts, notwithstanding the contract was under seal and signed in the firm name by only one of

the partners. The case appears to have been decided without regard to the previous and thoroughly considered case of *Banorgee* v. *Hovey*, the contract apparently being considered a nullity, whereas it was, according to the precedents, the deed of the partner who signed it. The case of *Fagely* v. *Bellas* is directly in point, but it is a mere decision without reasons assigned or precedents cited. We do not think these cases ought to control our decision. The contract here was executed by Smith in his own name, and there can be no doubt that he is individually bound by it. There are cases which hold that where the partner who executes the obligation is insolvent, the other partners may be reached in equity, there being no remedy against them at law. *Purviance* v. *Sutherland*, 2 Ohio St. 478 ; *Linney's Adm'r* v. *Dare's Adm'r*, 2 Leigh, 588 ; *Sale* v. *Dishman*, 3 Leigh, 548 ; *Weaver* v. *Tapscott*, 9 Leigh, 424, 426 ; *James* v. *Bostwick*, Wright (Ohio), 142 ; *Wharton* v. *Woodburn*, 4 Dev. & B. 507. These decisions rest on the assumption that at law an action will lie only on the specialty. And we think if there is any remedy against the non-executing partners it is in equity.

We think, therefore, there being no claim that the goods were furnished otherwise than in fulfillment of the contract under seal, without any variation or abandonment of it, that the plaintiff cannot maintain an action of *assumpsit*.

The plaintiff must therefore, agreeably to the agreement, become nonsuit, and judgment must be entered for the defendants for their costs.             *Judgment for defendants for costs.*

*James M. Ripley & George Fuller*, for plaintiff.

*Tillinghast & Ely*, for defendant Smith.

*Edwin Metcalf*, for the other defendants.