MARTIN HACKETT et al., Respondents, *v.* JAMES STANLEY, Impleaded, etc., Appellant.

The defendants entered into an agreement by which, in consideration of the loan of $750 from S, to G. " for use in the business of heating, ventilating,". etc., which sum it was stated was secured by the note of G. by the assignment of a policy of insurance and by chattel mortgages, and in further consideration of the services of S. in securing sales, and any other sums he might at his option advance, G. agreed to divide equally with him the net profits of the business. The said loan, the agreement stated, was " expressly for use in the business, and for no other use whatever." Any moneys either might advance for use in said business it was agreed should draw interest and might be withdrawn at his option, G. to be allowed $1,000 for his services in managing the business, he to make quarterly statements of its condition to S. The business was to be and was carried on in the name of G. *Held*, that as to creditors of the business S. was chargeable as a partner; and, this without regard to the fact that the creditors were ignorant of the agreement at the time of giving the credit. //

*Richardson* v. *Hughitt* (76 N. Y. 55); *Burnett* v. *Snyder* (Id. 344); *Eager* v. *Crawford* (Id. 97); *Curry* v. *Fowler* (87 id. 33); *Cassidy* v. *Hall* (97 id. 159) distinguished.

(Submitted June 28, 1889; decided October 8, 1889.)

APPEAL by defendant Stanley from a judgment of the General Term of the Court of Common Pleas of the city and county of New York, entered upon an order made April 4, 1887, which affirmed a judgment of the General Term of the City Court affirming a judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury.

This action was brought against defendants, as alleged copartners, for materials and labor in fitting up the premises used in the firm business.

The facts, so far as material, are stated in the opinion.

*James G. Janeway* and *Sidney Ward* for appellant. The agreement of the 23d of January, 1885, did not of itself constitute a partnership *inter sese*, or as to creditors. (*Richardson* v. *Hughitt*, 76 N. Y. 55; *Burnett* v. *Snyder*, Id. 344; *Eager* v. *Crawford*, Id. 97; *Curry* v. *Fowler*, 87 id. 33; *Cassidy* v. *Hall*, 97 id. 159; *Everett* v. *Coe*, 5 Denio, 180.) The agreement *per se* not constituting a partnership *quoad* third persons, the actions or declarations of Stanley do not render him liable as a partner. (*Cassidy* v. *Hall*, 97 N. Y. 159.)

*Thomas C. Ennever* for respondents. The written agreement between Gorham and Stanley made them partners as to creditors. (*Leggett* v. *Hyde*, 58 N. Y. 272.) It is not material that the agreement does not specify that Stanley shall share the losses. Sharing in the profits is sufficient to constitute a partnership as to third parties. (*Manhattan Brass Co.* v. *Sears*, 45 N. Y. 797.) The question as to whether plaintiff gave credit to the firm, or to Moulton W. Gorham as an individual, does not arise in the case and is wholly immaterial. The defendant Stanley was liable to creditors on the ground that he was a secret partner. (Story on Partnership, § 139.)

RUGER, Ch. J. The determination of this case involves the construction of an agreement between James Stanley and Moulton W. Gorham, and the question whether such agreement constituted the defendant Stanley a partner as to third persons with Gorham. If it did, then the judgment must be sustained.

The liability of the alleged partners is predicated upon a debt for services rendered and materials furnished by the plaintiffs, upon the request of Gorham, in fitting up a place in New York to carry on the business of heating, ventilating, etc.

The part of the agreement which, it is claimed, creates the partnership, reads as follows.: " That for and in consideration of the loan of seven hundred and fifty ($750) dollars from the said party of the second part to the said party of the first part, for use in the business of heating, ventilating, etc., for which said party of the first part has given unto said party of the second part his note at two years, with interest, bearing date of January 14, 1885, payment of which is secured by an assignment of said value in a certain $3,000 policy in the Massachusetts Mutual Life Insurance Company, and also by a certain chattel mortgage, bearing date January 23, 1885, *and in further consideration of services of said party of second part in securing sales in said business and for any further moneys he may, at his own option, advance for use in said business,* the said party of the first part agrees to divide equally the yearly net profits of said business. It is understood and agreed that said loan of seven hundred and fifty dollars is expressly for use in said business and for no other use whatever." It was further provided that advances made by either party in the business were at all times subject to be withdrawn at the option of the party making them, and were to bear interest while used in the business. Gorham was to be allowed $1,000 per annum for his services in managing the business, and quarterly statements of its condition were to be made by him to Stanley.

It is fairly to be implied from the contract that Gorham was to be the active man in the business, and it was to be carried on in his name ; but whether he was to furnish any capital, and if so, how much, is not disclosed. For aught that appears the money furnished by Stanley was all that was supposed to be necessary, to start and carry on the business until returns were realized from its prosecution.

This agreement does not, in express terms, purport to form

a partnership; neither is the intention to do so disclaimed, and the question is, therefore, whether, in a business carried on under the conditions provided for in the contract, the parties thereto became partners as to third persons. It clearly provides for something more than a loan of money, as it is fairly to be implied from it, that Stanley would render active services as a principal in the prosecution of the business, and furnish further financial aid therefor if it became necessary, and he deemed it advisable to do so. The loan was not one made to Gorham generally, but was for the benefit of the particular business in whose prosecution Stanley had an equal interest, and any diversion of the funds from such use was strictly prohibited. Each party was authorized to charge the business with interest on the funds advanced by him for its prosecution, and they would each be entitled to *pro rata* reimbursement of such funds from the assets of the business in case of a deficiency of funds to pay the advances in full. In that respect it was evidently contemplated that each party should bear any loss incurred in proportion to the advances made by them respectively. For all this Stanley was to receive one-half the net profits of the business. His right to profits would not cease upon the repayment of the original loan, or depend upon the value of the services rendered or moneys advanced, or either of them alone, but was to continue as long as the business was carried on. The letter of the contract is that, in consideration of the loan of $750, payable in two years, and the *further consideration* of services in securing sales in said business, and further moneys furnished, the net profits are to be divided. The services promised, and the moneys advanced and to be advanced, each and all constituted the consideration, for the division of the profits.

We think such an agreement, within all authorities, constitutes a partnership as to third parties. By it Stanley had an interest in the general business of the concern; a right to require a quarterly account of its transactions; authority to make contracts in its behalf, and an irrevocable right to

demand one-half of the profits of the business. That the original loan of $750 was secured to be repaid by Gorham to Stanley does not preclude the conclusion that they were partners, for it is entirely competent for one partner to guarantee another against loss, in whole or in part, in a partnership business, if the parties so agree.

The application of the rule that "participation in profits" renders their recipient a partner in the business from which profits are derived, as to third persons, has been somewhat restricted by modern decisions, but we think that the division of profits must still be considered the most important element in all contracts by which the true relation of parties to a business is to be determined. We think this rule is founded in strict justice and sound policy. There can be no injustice in imposing upon those who contract to receive the fruits of an adventure, a liability for credits contracted in its aid, and which are essential to its successful conduct and prosecution. This liability does not, and ought not, to depend upon the intention of the parties in making their contract to shield themselves from liability; but upon the ground that it is against public policy to permit persons to prosecute an enterprise which, however successful it may for a time appear to be, is sure in the end to result in advantage to its secret promoters alone, and the ruin and disaster of its creditors and others connected with it. (*Atherton* v. *Tilton*, 44 N. H. 452; *Chase* v. *Barrett*, 4 Paige, 159.) Expected profits being the motive which induces the prosecution of all commercial and business enterprises, their accumulation and retention in business is essential to their success; and if persons are permitted, by secret agreement, to appropriate them to their own use and throw the liabilities incurred in producing them upon those who receive only a portion of the benefits, not only is a door opened to the perpetration of frauds, but such frauds are rendered inevitable.

Exceptions to the rule are, however, found in cases where a share in profits is contracted to be paid, as a measure of compensation to employes for services rendered in the business, or for

the use of moneys loaned in aid of the enterprise; but when the agreement extends beyond this and provides for a proprietary interest in the profits as a compensation for money advanced and time and services bestowed, as a principal in its prosecution, we think that the rule still requires such party to be held as a partner.

The rule laid down in Kent's Commentaries (vol. 3, 25), that "the test of partnership is a community of profit; a specific interest in the profits, as profits, in contradistinction to a stipulated portion of the profits as a compensation for services," was approved by this court in *Leggett* v. *Hyde* (58 N. Y. 272), in which case Judge FOLGER says: "The courts of this state have always adhered to this doctrine and applied or recognized it in the cases coming before them." After citing numerous cases in support of the statement, he proceeds: "There have been from time to time certain exceptions established to this rule in a broad statement of it, but the decisions by which these exceptions have been set up still recognize the rule that, where one is interested in profits, as such, he is a partner as to third persons. These exceptions deal with the case of an agent, servant, factor, broker or employe, who, with no interest in the capital or business, is to be remunerated for his services by a compensation from the profits, or by a compensation measured by the profits." The learned judge, after referring to the English cases claimed to have qualified, if not overruled, the cases of *Grace* v. *Smith* (2 W. Black, 998), and *Waugh* v. *Carver* (2 H. Bl. 235), which were the foundation of the doctrine that a participation in profits renders those receiving them partners, says that " without discussing those decisions and determining just how far they reach, it is sufficient to say that they are not controlling here, that the rule remains in this state as it has long been, and that we should be governed by it until here, as in England, the legislature shall see fit to abrogate it."

The same remark may also be applied to the cases of *Harvey* v. *Childs* (28 Ohio St. 319); *Hart* v. *Kelley* (83 Penn. 286); *Beecher* v. *Bush* (45 Mich. 188); *Eastman* v. *Clark* (53 N. H.

276); *Emmons* v. *Westfield* (97 Mass. 230), decided in the courts of our sister states, in which the distinction between contracts of partnership *inter sese* and those making the parties partners as to third persons, although not so as between themselves, is sought to be practically abolished.

The doctrine that persons may be partners as to third persons, although not so as between themselves, and although the contract of partnership contains express provisions repudiating such a relation, has been too firmly established in this state, by repeated decisions, to be now disregarded by its courts.    (See cases cited in *Leggett* v. *Hyde.*)

It is claimed that this doctrine has been practically overruled in this state by the decisions, in this court, of *Richardson* v. *Hughitt* (76 N. Y. 55); *Burnett* v. *Snyder* (Id. 344); *Eager* v. *Crawford* (Id. 97); *Curry* v. *Fowler* (87 id. 33) and *Cassidy* v. *Hall* (97 id. 159).

We do not think these cases had the effect claimed.    They were all cases distinguished by peculiar circumstances taking them out of the operation of the general rule.    It cannot be disputed but that a loan may be made to a partnership firm on conditions by which the lenders may secure a limited or qualified interest in certain profits of the firm without making them partners in its general business, but that is not this case.

In *Richardson* v. *Hughitt* (*supra*), Bench Bros. & Co. were a manufacturing firm, carrying on the business of making wagons, and Hughitt contracted to advance to them $50 on each wagon manufactured by them and delivered to him, to the extent of two hundred wagons, under an agreement that upon the sale of the wagons he was to receive back the moneys advanced, with interest, and one-fourth of the net profits on such wagons.    It was held that this was a mere loan of money providing for an interest in the profits as a compensation for the money loaned.

The lender secured no interest in the general business of the firm or interest in the profits made therein, and did not become liable for its debts.    It is quite clear that if such a contract had been made after the wagons were finished, it

would have created simply a pledge of property for the payment of a debt, competent for the parties to make and which would not have made the pledgee a partner. The fact that the contract was executory would not alter the real nature of the transaction, or affect the relations of the parties to third persons.

The case of *Eager* v. *Crawford* (*supra*) was a pure loan of money with an agreement that the borrower should pay to the lender on the first day of each month one half of the gross receipts of the business carried on by him until the whole sum, with interest, was repaid. The dispute in the case was upon the question whether the stipulation for one half the gross receipts was intended to refer to profits. The question submitted to the jury, the evidence being conflicting, was whether it was "the real understanding between the parties that Crawford should participate in the profits, as such; if it was, it would constitute a partnership," otherwise not. This court approved the charge.

In *Burnett* v. *Snyder* (*supra*), two of the members of an existing firm, composed of five persons, agreed with Snyder, for a good consideration, that if he would become liable to them for one-third of the losses sustained by them in the business of their firm, they would pay to him one-third of the profits received by them in such business. For obvious reasons it was held that Snyder, under this agreement, took no interest in the general business of the firm, and did not become a member thereof.

In *Curry* v. *Fowler* (*supra*) W. G. and J. E. McCormick were an existing firm owning certain vacant real estate in New York, which they desired to improve. To enable them to do so Fowler loaned $50,000 to them, taking as security therefor a mortgage upon the land, with an agreement that he should be repaid his loan and interest, with one-half of the profits of the adventure, which the McCormicks guaranteed should amount to $12,500. This case was decided upon the authority of *Richardson* v. *Hughitt* and was said to resemble it in all essential particulars.

In *Cassidy et al.* v. *Hall* (*supra*), it was held that the defendants were mere lenders of money to an existing corporation. The opinion states that " under the agreement the advances were to be made only upon such orders as the defendants approved, and the most that can be claimed from it is that the defendants were the financial agents of the company to make advances and discount their paper for the purpose of relieving the company from the financial embarrassment under which it was evidently laboring, for which they, the defendants, were to receive a proportion of the face of the orders, upon which the advances were made, as a compensation for the risks they incurred and for the use of the money advanced by them. They were not generally interested in the affairs of the company; but only for a special and specific purpose, and in no sense were they partners."

It cannot reasonably be claimed that either of these cases is an authority for the reversal of this judgment. Whatever might have been their bearing if they related to the loan of money alone, we will not say; but when connected with the circumstance that the defendant was expected to render future services as a principal and furnish further financial aid, with a certain supervision over the conduct of the business, we think this case is clearly distinguishable from those cited.

In the view taken of this case, it is quite immaterial whether the plaintiff extended the credit to Gorham alone or not, as the defendant was held liable upon the ground that as to third persons he was a partner, and it did not affect that liability, whether the plaintiff knew the fact or not .

The exception to the ruling of the court sustaining the objection to the question put to plaintiff on cross-examination, as to whom the credit was furnished, was not well taken, as the fact sought to be proved was immateral.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.