The "jury" to whose knowledge we must appeal in the present inquiry is the legislature, for we are seeking its intention in its enactment upon the subject of the creation of a funded debt by a county. The legislature has especially authorized counties to borrow money, in advance of tax, for payment of the cost of construction of certain public improvements, and the issuing of bonds in payment of the loan. Wherever a funded debt is to be created under the section headed "Funded Debt," the legislature has declared that the resolution ordering it must be passed by a two-thirds vote of the members elected to the board of supervisors, or the question must be submitted to and approved by the electors of the county; and in this case there has been neither a two-thirds vote, nor an approval by the electors. As the subject of the resolution in question seems to fall within the provision above referred to, I am of the opinion that the debt falls within the class of funded debts, and requires the vote of two-thirds of all the members of the board of supervisors.

It follows that the resolution of the board of supervisors directing the issue of the bonds in question was invalid; and we direct judgment in accordance with the demand of the defendant. that the resolution of the board of supervisors directing the issue of county bonds to the amount of $64,978 is invalid.

Judgment for defendant on agreed statement of facts. All concur.

---

MERCHANTS' NAT. BANK OF PLATTSBURGH v. BARNES et al.

(Supreme Court, Appellate Division, Third Department. July 6, 1898.)

1. PARTNERSHIP—WHAT CONSTITUTES.

An agreement by which one party agrees to pay all expenses in an ice-harvesting venture, sell the ice, and, after deducting all expenses, pay one-fourth of the net profits to the other, who is to put in his time and furnish the necessary materials for doing the work, does not constitute a partnership between them; and the former is not liable on a note executed by the latter in a firm name adopted by him without the authority or consent of the other.

2. SAME.

Where the evidence showed that persons engaged in a business venture were not partners, the fact that one of them had previously alleged in an answer filed in another suit that he was a partner, which answer he afterwards withdrew, and filed another negativing the existence of a partnership, is not sufficient to charge him as a partner as to third persons.

Appeal from trial term, Clinton county.

Action by the Merchants' National Bank of Plattsburgh against Erastus H. Barnes and others. From a judgment in favor of plaintiff, defendant Barnes appeals. Reversed.

The complaint alleges: That the defendants on the 5th day of March, 1890, became partners in business under the firm name of John Brown & Co., and as such partners in June or July, 1890, borrowed $4,000 of the plaintiff, and, on October 20, 1890, had reduced the indebtedness to $3,000, and thereupon, under said firm name, gave to the plaintiff their promissory note, to the order of A. M. Warren, and indorsed by him, dated that day, for said $3,000, payable, with interest, two months after that date. That said note was

renewed from time to time, and some payments made thereon. That on the 12th day of May, 1896, the defendants, as such firm, were owing the plaintiff $2,889.93 upon account thereof, and in consideration thereof gave the plaintiff the following note, with the indorsement of the payee thereon:

"$2,889.93.                                        Plattsburgh, N. Y., May 12, 1896.

"Four months after date we promise to pay to the order of A. M. Warren $2,889.93, at the Merchants' National Bank of Plattsburgh, N. Y. Value received, with use.                                        John Brown & Co."

—That neither the same, nor the indebtedness represented by the note, has been paid. The defendant Barnes, in addition to a general denial, answered denying that he ever was a partner of the other defendants, or member of any firm of John Brown & Co.; that, if there ever was any such firm, it ceased before any part of the alleged obligations were incurred; that the note was made by the defendant John P. Brennan in the name of said firm without authority,—and set up the six-years statute of limitations. It was shown upon the trial that on the 5th day of March, 1890, the defendants Brown and Brennan, and the defendant Barnes, acting for E. H. Barnes & Co., of which said defendant and E. Dwight Church were members, made the following agreement:

"Memorandum made March 5th, 1890, by and between John Brown and John P. Brennan, of one part, and E. H. Barnes & Co., of the other, is as follows, to wit: Said Brown & Brennan are about to put in their time so much as may be necessary to the management of harvesting, piling, and housing ice at Gravelly Point and on Martin's farm on the shore of Lake Champlain, and to put up properly all the ice at such places as they reasonably may, from this time on, until the ice melts or is unfit to house, and are to receive therefor one-fourth of the net profits realized on sale and settlement after the ice is disposed of. The said Barnes & Co. agree to furnish the lumber and the money necessary to pay help and all other expense in harvesting and housing and selling such ice; to sell such ice, using their best judgment as to time, price, and persons; and, after deducting all expenses to which they have been put, and all advances, to pay to said Brown & Brennan one-fourth of the net profits of such ventures. Said Barnes & Co. to furnish the necessary tools, and all necessary articles and materials. After having realized what sum has been put in expenses and advances, &c., the said Barnes & Co. are to pay over thereafter monthly the said net profits herein promised to said Brown & Brennan. This contract is intended, also, in all its terms, to apply to and include the ice to be put in the ice house in Baker's lumber yard, in the village of Plattsburgh.

"Dated March 5th, 1890.                                        John Brown.
                                                               "J. P. Brennan.
                                                               "E. H. Barnes & Co."

The said Brown and Brennan thereupon harvested and housed upon the shore of Lake Champlain large quantities of ice, prosecuting the work with a large force of help so long as the ice was fit to house, drew upon Barnes, or Barnes & Co., from time to time, and rendered accounts to the defendant Barnes, or Barnes & Co., for the expenses they incurred, all of which drafts were promptly paid by Barnes, or Barnes & Co., to the amount, including moneys otherwise advanced or paid, of $84,626.61. On September 30, 1896, Brown and Brennan settled with Barnes & Co. Brown and Brennan meantime had received some items upon Barnes & Co.'s account, and they credited them therewith. There was some difference as to the exact balance due them from Barnes & Co., but it was settled at $2,500, which sum Barnes & Co. paid to Brown and Brennan, and took from them the following receipt:

"Plattsburgh, New York, September 30, '90.

"Received of E. H. Barnes & Co. twenty-five hundred dollars ($2,500 00/100), at which amount the within account is settled in full of all demands to date, of whatsoever name or nature; and, in acknowledging receipt whereof, we hereby agree to, and do, waive any further charges against E. H. Barnes & Co. that might hereafter appear as having been incurred by us, individually

or collectively, in the harvesting and purchase of ice during the season of 1890 under contract with E. H. Barnes & Co.       John Brown & Co.
"Witness: Frank E. Rogers."

Most of the drafts thus drawn were deposited by Brown and Brennan in the plaintiff's bank, to the credit of an account which they opened with the plaintiff in the name of John Brown & Co. Brown and Brennan deposited in such account about $4,000 of their own money, and in addition made notes in such name, and procured the plaintiff to discount them. The note for $3,000, dated October 20, 1890, was a renewal of a like note made June 18, 1890; but whether the June note was a renewal of previous notes, the witnesses could not say. These notes were made by Brown and Brennan without the knowledge or authority of Barnes & Co. The plaintiff made no claim against the defendant thereon until after his first answer in the suit of Brown and Brennan in 1896 against Myers & Co., in which answer Barnes alleged that he was a member of the firm of John Brown & Co., which answer he obtained leave to withdraw upon his allegation of a mistake, as set forth in the opinion. Neither Barnes nor Barnes & Co. had any dealings with the plaintiff, and made no representations to it. Brown and Brennan conducted their part of the business under the contract of March 5, 1890, in the name of John Brown & Co., and, in suits brought by them, alleged that they composed that firm.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Thomas F. Conway, for appellant.
L. L. Shelden, for respondent.

PARKER, P. J. The contract of March 5, 1890, created no partnership between the defendant Barnes and Brown and Brennan. It was simply a contract by which Brown and Brennan were to harvest and house upon the shores of Lake Champlain large quantities of ice for Barnes & Co., at the latter's expense, and were to receive therefor from Barnes & Co. one-fourth of the net profits which the latter should realize upon the sale thereof, after the latter had deducted all expenses. Brown and Brennan used the firm name of John Brown & Co. in carrying out their part of the transaction, both in their dealings with Barnes & Co. and with others. The contract does not mention such firm name. Barnes & Co. employed Brown and Brennan to use the former's money, tools, articles, and materials, so far as the latter could reasonably employ the same, for harvesting and housing the ice. Thereupon the stored ice would belong to Barnes & Co., who agreed to sell it, and pay one-fourth of the net profits to Brown and Brennan for their services. Brown and Brennan reserved no interest in the ice. They were not required to advance any money. When the ice was housed, it would belong to Barnes & Co., and Brown and Brennan would have to wait for the pay for their services until Barnes & Co. should sell the ice. The agreement as made was carried out. Brown and Brennan did gather and house the ice, and Barnes & Co. paid all the expenses. It does not appear that any profits were realized upon the sale of the ice, and we assume there were none. It is plain that, as between themselves, no partnership was created between Barnes or Barnes & Co. and the other defendants. The creation of any debt by Brown and Brennan against Barnes & Co. to the plaintiff for

advances was not authorized, and was not necessary, since Barnes & Co. were not remiss in supplying to Brown and Brennan the necessary funds upon their request or drafts.   As between the parties to the agreement, the debt to the plaintiff was not a partnership one, but the separate debt of Brown and Brennan, which, if incurred in anticipation of Barnes & Co.'s advances, should have been paid therefrom.    But Brown and Brennan were to receive "therefor" (that is, for their services) "one-fourth of the net profits realized on sale and settlement after the ice is disposed of," and Barnes & Co. agreed "to pay Brown & Brennan one-fourth of the net profits of such ventures."    It is therefore urged that they were partners as to third persons, and hence as to the plaintiff.    This would be so if Brown and Brennan had retained an interest in the profits, as such, as distinguished from the measure of the amount of compensation Barnes & Co. agreed to pay them for their services, or as distinguished from the one-fourth share of Barnes & Co.'s profits which the latter agreed to pay them.    As pointed out in Leggett v. Hyde, 58 N. Y. 272, 278, "The specific interest in profits which is to make a person a partner must be a proprietary interest in them, existing before the division of them into shares;" quoting with approval 3 Kent, Comm. 25, note b, where it is said, "The test of a partnership is a community of profit; a specific interest in the profits, in contradistinction to a stipulated portion of the profits as a compensation for services." This test is well established in this state.    Hackett v. Stanley, 115 N. Y. 625, 22 N. E. 745; McLewee v. Hall, 103 N. Y. 639, 8 N. E. 486; Cassidy v. Hall, 97 N. Y. 159; Richardson v. Hughitt, 76 N. Y. 55; Smith v. Bodine, 74 N. Y. 33; Leggett v. Hyde, 58 N. Y. 272; Bank v. Gallaudet, 122 N. Y. 655, 25 N. E. 909.    Barnes & Co. were not partners of the other defendants, as to third persons.    Barnes & Co. did not hold themselves out to the plaintiff or to the public as partners with the other defendants, and therefore they did not become liable upon that ground.    McLewee v. Hall, supra.

In July, 1896, the defendant Barnes verified an answer in which it was alleged that "he has now, and at all times mentioned in said amended complaint had, an interest as co-partner in the business of said John Brown & Co."    Brown and Brennan had brought an action against F. W. Myers & Co., claiming to recover for ice which they, as partners under the firm name of John Brown & Co., had sold them between March 1 and May 31, 1890.    Barnes had been interested with Myers & Co. in buying this ice, and, if any sum was unpaid thereon, he supposed it was payable to Barnes & Co.    Myers & Co. consulted with counsel in Plattsburgh, and they interposed an answer alleging that Barnes was a member of the firm of Brown & Co., and also alleged payment.    Myers & Co.'s counsel desired Barnes to interpose an answer, and wrote to him, inclosing a copy of Myers & Co.'s answer.    Barnes answered the letter, saying:

"Mr. Myers is right in his allegation saying that I am interested in the firms of F. W. Myers & Co. and John Brown & Co.    I can give no additional facts for the defense of plaintiff's complaint, and wish you would kindly attend to this matter, and advise me of any steps necessary for me to take to protect the interests of F. W. Myers & Co. as well as my own."

Counsel at Plattsburgh thereupon mailed him the answer containing the above allegation, and Barnes verified it. Afterwards, being in doubt as to the correctness of his answer in this respect, he consulted his home counsel in New York, and stated to them the facts in full, and was advised by them that the answer was not correct. He thereupon procured leave to withdraw the same, and then served an amended answer, in which such allegation did not appear. This answer thus withdrawn, and the letter, constitute the only evidence of the defendant's membership of the firm of John Brown & Co. As explained, they are mere scintillæ, and insufficient, in the face of the uncontradicted and unmodified contract, to support a finding of the existence of Barnes' partnership with Brown and Brennan. Whether a person is a partner with others is often an embarrassing question; and a mistaken admission of the fact, seasonably corrected (both admission and correction being made after the transactions upon which the rights of the parties depend), should not be permitted to change such rights. 1 Lindl. Partn. 115, 116; Ridgway v. Philip, 1 Cromp., M. & R. 415; Vice v. Anson, 7 Barn. & C. 409. Here the test of the partnership is the written agreement of March 5, 1890, and by that test the defendant Barnes never became a member of the firm of John Brown & Co.

The judgment should be reversed; new trial granted; costs to abide the event. All concur; MERWIN, J., in result.