---

### RUSSELL et al. v. NORTON et al.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

PARTNERSHIP—AGREEMENT CREATING AS TO THIRD PERSONS—SUFFICIENCY.

    In an action against one as a copartner on notes of a firm, there was proof that he was ever held out as a partner or that the payee believed him to be such. The only evidence relied on was a written agreement between him and the firm and a member thereof. It recited that an indebtedness of the firm, aggregating nearly $20,000, had been acquired by him, and that, in consideration of provisions of the agreement for its payment, defendant promised to loan the firm the further sum of $24,000, both debts to be evidenced by firm notes payable on demand, to be indorsed by the member individually a party to the agreement. The latter was to take charge of the business, and without defendant's consent, incur no further liability in excess of a certain amount, or exhaust the capital by the payment of salaries, which were limited by the agreement. He was to indorse no paper in his name or the name of the firm, keep the books open for defendant's inspection, and give him a trial balance once a month. At the end of each year, defendant was to have one-half of surplus receipts over expenses, after paying interest on the notes, and after the notes were paid he was to receive 10 per cent. for ten years, if he lived that long, and, if not, until his death. The agreement provided that he was not a partner, and that no representations were to be made to that effect, that his relation was solely that of a lender for use in the firm business, and that the profits received were only to compensate him for the risk incurred. *Held,* that this did not make defendant a partner, and so liable on the firm notes sued on.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 34.]

    Houghton, J. dissenting.

Appeal from Trial Term.

Action by James C. Russell and another, as executors of Thomas Russell, deceased, against Eliot Norton, impleaded with others. From a judgment for plaintiffs, and from an order denying a new trial, defendant Norton appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Robert Thorne, for appellant.
John Ewen, for respondents.

McLAUGHLIN, J. This action was brought to recover upon five promissory notes made and delivered to the plaintiffs' testator in the year 1899 by the firm of E. R. Herrick & Co. The complaint charged that at the time the notes were made the firm of E. R. Herrick & Co. was composed of the defendants Edmund R. Herrick, T. Edwin Ward, and Eliot Norton. Norton in a separate answer, denied that he was a member of said firm, or that any copartnership relations existed between him and the other defendants at the time the notes in question were given, and he also pleaded as an affirmative defense the statute of limitations. At the trial it was conceded by the plaintiffs' attorney that the statute of limitations prevented a recovery on three of the notes, and a verdict was directed against all of the defendants for the amount of the other two, with interest, and from the judgment entered thereon, and an order denying a motion for a new trial, the defendant Norton alone appeals.

The sole question presented by the appeal is whether Norton was, in fact, a member of the partnership at the time the notes were given, and its solution depends upon the construction of a written agreement which was entered into on the 31st of January, 1898, between Edmund R. Herrick and E. R. Herrick & Co., parties of the first part, and the appellant, Norton, party of the second part. The agreement recites that the firm of E. R. Herrick & Co. had become indebted for loans and advances to various individuals in the aggregate sum of $19,356.82, which indebtedness had been acquired by the party of the second part, who, in consideration of provisions of the agreement for the payment of said sum, promised to loan the firm a further sum of $24,000, such loan, as well as the original indebtedness, to be evidenced by notes made by the firm, payable to him on demand, bearing interest at the rate of 6 per cent. per annum, payable semiannually on the 31st day of December and the 30th day of June in each and every year, and which notes were to be indorsed by Edmund R. Herrick; that Herrick should take charge of the business of the firm, devoting his entire time thereto, keep true books of account, promptly deposit all moneys received in a bank named to the credit of the firm, and pay all its debts by checks drawn to the order of the creditors, not contract any obligations exceeding $500 without obtaining Norton's consent, would not indorse any paper, either in his name or in the name of the firm, or engage in any business similar to that conducted by the firm during the life of the agreement; that the books and records of the firm were at all times to be open for the inspection of Norton, who was to have a trial balance once every month, and that the books were to be balanced and an account struck at least twice each year, for the purpose of ascertaining the profits or losses of the business during the preceding six months; that Herrick was to have a salary of $1,800 per year, and in addition thereto the right to draw a sum not exceeding $50 per month as against his share of the future profits of the firm, provid-

ed that the parties to the agreement agreed that the business warranted it; that at the end of each year an annual account should be taken of the receipts and disbursements of the firm for the preceding year, and if there were any surplus of receipts over expenses, after paying the interest upon the notes held by Norton, then he was to receive a sum equal to one-half of such surplus, and after his notes had been paid, together with the interest thereon, he was to be paid only 10 per cent. of such surplus for a period of 10 years, if he lived so long, and, if not, until his death. The agreement further provided that Norton was not a partner and that no representation should be made to that effect, and that his relation to the firm was solely that of a lender for use in its business, and that the profits which he was to receive were only for the purpose of compensating him, not by way of interest, but for his risk of loss.

The business of the firm was unprofitable, and in February, 1899, was wound up, when substantially all of its assets, amounting to $17,569.30, were turned over to Norton to apply on his claim. Intermediate the making of the agreement and the firm's ceasing to do business, it gave the notes mentioned in the complaint to the plaintiffs' testator, who knew nothing of the agreement with Norton, and in no way relied upon his being a member of the firm in giving the credit or taking the notes from the firm. Notwithstanding this fact, the trial court held that the agreement itself made Norton a partner, and for that reason it is contended on the appeal that the trial court did not err in directing a verdict in favor of the plaintiff. No facts were proved, outside of the agreement, which would justify a finding that Norton was a partner, and whether the court erred in construing the agreement is, as already suggested, the only question presented.

I am unable to reach the conclusion that the agreement made him a partner. Its purpose was to secure the payment of the indebtedness then due, as well as the payment of the $24,000 which he was to advance. He had no voice in the management of the business, other than such as a vigilant creditor would have, in the exercise of good judgment, under the same circumstances. His claim against the concern, which it is certainly fair to assume was in a precarious financial condition, amounted to nearly $20,000, and it may well be, under such circumstances, that as a condition for the further loan of $24,000 he should require the firm to make a certain statement, incur no further liability in excess of $500, or exhaust the capital by the payment of salaries, without his consent, and have its books open for his inspection at all times, as well as make to him statements from time to time. This was not an unreasonable requirement. It is not an uncommon practice to require debtors to make written statements of their financial condition to their creditors, not only at the time when the indebtedness is incurred, but also from time to time thereafter until the same is paid. Nor does the fact that he was to receive a share in the profits make him a partner. This was made as compensation for the risk incurred, as well as for the use of the money advanced. He had no other interest in the concern, and it was not intended that he should have. The agreement so recites. This intent

should have some consideration, especially in view of the fact that the plaintiffs' testator did not act upon the assumption that Norton was a partner, or accept the notes believing him to be such.

A partnership is, in one sense, a species of agency, and where the parties to a contract do not themselves intend a partnership it would seem, on principle, that the one who is unknown to those who deal with the others should be held only on the same ground that an undisclosed principal would be bound. Cox v. Hickman, 8 H. L. Cas. 268. If this principle be applied, then the recovery is wrong, because the agreement expressly provides they were not to be partners in any sense, and the plaintiffs' testator did not suppose they were. The fact that Norton was to have a share of the profits for a specified time in no way changed the situation. It seems to be well settled that when a party is only interested in the profits of a business as a means of compensation for services rendered, or for money advanced he is not a partner. Cassidy v. Hall, 97 N. Y. 159; Curry v. Fowler, 87 N. Y. 33, 41 Am. Rep. 343; Richardson v. Hughitt, 76 N. Y. 55, 32 Am. Rep. 267; Eager v. Crawford, 76 N. Y. 97; Merchants' Nat. Bank v. Barnes, 32 App. Div. 92, 52 N. Y. Supp. 786; Wisotzkey v. Niagara Fire Ins. Co., 112 App. Div. 599, 98 N. Y. Supp. 760; Meehan v. Valentine, 145 U. S. 611, 12 Sup. Ct. 972, 36 L. Ed. 835; Beecher v. Bush, 45 Mich. 188, 7 N. W. 785, 40 Am. Rep. 465; Smith v. Knight, 71 Ill. 148, 22 Am. Rep. 94; William v. Soutter, 7 Iowa, 435.

The agreement is quite similar to the one which was considered in Cassidy v. Hall, supra, and the court said:

"When a party is only interested in the profits of a business as a means of compensation for services rendered, as was the fact under the contract in the case at bar, or for money advanced, he is not a partner."

In Richardson v. Hughitt, supra, advances were to be made under an agreement upon personal property to be manufactured and delivered, for which, when sold, the defendant was to receive one-fourth of the profits and his advances, with interest, at 5½ per cent. The court held that the true construction of the instrument was:

"That it was a contract between the lender and the borrower, and the provision made as to the profits was merely a mode of providing a compensation to Hughitt for the use of the money which he had advanced, and that the share of the profits which Hughitt was entitled to receive was not as a partner, but on account of the debt owing to him by the firm of Bench Bros. & Co."

The rule laid down in Richardson v. Hughitt, supra, and Cassidy v. Hall, supra, was adopted in Meehan v. Valentine, supra, where the latter case is cited with approval and the statement is made that:

"In whatever form the rule is expressed, it is universally held that an agent or servant, whose compensation is measured by a certain proportion of the profits of the partnership business, is not thereby made a partner in any sense. * * * It is now equally well settled that the receiving of part of the profits of a commercial partnership, in lieu of or in addition to interest, by way of compensation for a loan of money, has of itself no greater effect."

In view, therefore, of the fact that the parties to the agreement did not intend to become partners, and that there was no proof that

Norton had ever been held out to be a partner, or that the plaintiffs'
testator believed him to be such, it seems to me, under the authorities
cited, that the court erred in directing a verdict for the plaintiffs, and
in reaching this conclusion the authorities cited by the respondents'
counsel have not been overlooked. The only relation which existed
between Norton and E. R. Herrick & Co. was debtor and creditor.
He is not legally liable to its creditors, and the jury, upon the proof
presented, should have been so advised.

If I am correct in this conclusion, then the judgment and order ap-
pealed from should be reversed, and a new trial ordered, with costs
to appellant to abide event.

INGRAHAM, LAUGHLIN, and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). I think the proof showed liability
on the part of Norton as a partner. At the time the agreement was
entered into the firm of E. R. Herrick & Co. did not exist, except in
name. Herrick was the only person interested, and he owned all the
assets. By the agreement Norton assumed to direct him, as well as to
control the management of the business. Norton was to receive inter-
est upon his money and one-half the profits until the notes were paid,
and after the notes were paid he was to receive 10 per cent. of the
profits for 10 years. The agreement does not say that the 50 per cent.
of profits which Norton was to receive was to be applied to payment
upon the notes, but it was to be paid to him as profits. Whether a
certain portion of the notes was to be paid before profits were figured
does not appear. Evidently it was considered either that the business
would be very profitable or that the assets were sufficient security for
Norton's indebtedness, for no time was fixed for payment of the notes,
and until they were paid Norton was to have 50 per cent. of the profits,
and after they were paid for 10 years he was to have 10 per cent.

That such is the fair interpretation of the somewhat obscure ninth
paragraph of the agreement is evidenced by the fact that at the end it
is provided that in the event of Norton's death he should no longer
receive "either of said sums." The term "either of said sums" can
refer to nothing except one-half the profits and the 10 per cent. It
would be a curious condition of law if a man could thus deplete the
resources of an actual or fictitious copartnership and escape liability
for its debts. Of course, a man can lend money to a copartnership, or
perform services for it, and stipulate for a share of the profits as com-
pensation, without becoming a partner inter sese or as to third persons;
but such an agreement must be fairly construed. If Norton by his
contract made himself a partner, he could not change its legal effect by
stipulating in the same instrument that he should not be so considered.

The appeal brings up only questions of law, for each side asked for
a direction of verdict, and no question of weight of evidence arises.
If any inference as to participation in the copartnership business is to
be drawn from the fact that Norton appeared when the deal for sale of
the copyright plates was closed, and demanded that the $1,200 be paid
to him, and that he paid the agent his commissions, it must be taken in

favor of the plaintiffs. In view of the provisions of the contract, I think this act on his part has some probative force.

I think the judgment was right, and should be affirmed.