THE AMERICAN SEEDING MACHINE COMPANY, Respondent, *v.* THE JOHN CONKLIN'S SONS COMPANY, and C. M. SHARPE, Impleaded, Appellants.

(County Court, Schuyler County, October, 1909.)

Partnership — What constitutes — Sharing profits — Profits as compensation for services.

> Where a party is interested only in the profits of a business as a means of compensation for services rendered, or for money advanced, he is not a partner.
>
> The complaint, in an action brought in justice's court, against J. C.'s Sons Co. and S. upon a promissory note made by S. and for goods sold and delivered to him, alleged that he and the J. C.'s Sons Co., a corporation, were copartners, doing business under the firm name of C. M. Sharpe & Co. The corporation defendant separately answered by a general denial. It appeared that defendant S., who was the only person doing business under the firm name of C. M. Sharpe & Co., continued to receive goods under consignment from defendant J. C.'s Sons Co. after their incorporation under a contract previously made with J. C. & Son, under which he was entitled to retain for his services one-half of the net profits of sales, and that he was also engaged in buying and selling goods other than those so consigned. It further appeared that the goods sued for and those in payment for which the note in suit was given were purchased by S. under the name of C. M. Sharpe & Co. and that he sold some of the goods so purchased, taking notes in payment, and, in some instances, where sales were made from goods consigned by the J. C.'s Sons Co. as well as from goods purchased from plaintiff, title notes were taken payable to the J. C.'s Sons Co. and S. received credit upon his account with it; and it does not appear that plaintiff, at the time of the sale and delivery of the goods sued for, knew of the existence of the contract between the defendants, or that the J. C.'s Sons Co. held itself out to plaintiff or to the public as a partner with S., the complaint, on appeal for a new trial in the County Court, will be dismissed as to the J. C.'s Sons Co. with costs.

ACTION by the American Seeding Machine Company, a foreign corporation, against The John Conklin's Sons Company, a domestic corporation, and C. M. Sharpe, impleaded, upon a promissory note and for goods sold and delivered.

This action was tried in justice's court, where a judgment was rendered against the defendants, from which judgment The John Conklin's Sons Company appeal for a new trial in this court.

C. J. Huson for appellants.

John M. Roe and O. P. Hurd for respondent.

Nye, J.    This action was brought to recover upon a promissory note, made and delivered to the plaintiff on December 5, 1907, by C. M. Sharpe & Co. and also for goods sold and delivered by the plaintiff to C. M. Sharpe & Co. during the years 1907 and 1908.

The complaint alleges that, at the time the note was made and the goods were sold and delivered, the defendant The John Conklin's Sons Company and C. M. Sharpe were copartners, doing business under the firm name of C. M. Sharpe & Co.    The John Conklin's Sons Company in a separate answer interposed a general denial.

On the 7th day of July, 1906, John Conklin & Son and C. M. Sharpe entered into the following written agreement:

"An agreement made this 7th day of July, 1906, by and between John Conklin & Son, of Penn Yan, N. Y., of the first part, and C. M. Sharpe, of the Village of Watkins, N. Y., of the second part, as follows:

"The first party is to consign to the second party at Watkins, N. Y., or such other point in that vicinity as the second party may desire, wagons, carriages, sleighs, harness, robes and blankets, and such other articles as the party of the first part may select, and which may be desired by the second party; they are to be shipped at such time as the second party may desire the same, and in such quantities as the first party may determine; each shipment is to be accompanied by an invoice showing the cost price of each shipment to the first party, f. o. b. at Penn Yan, N. Y., or at the factory from which the same may be shipped, and the second party is to pay the freight charges thereon, and which is to be added to the cost or invoice price; the first party is to furnish the

second party with a list showing the usual prices for which such merchandise is sold, and the second party is to sell the same at as near such price as possible. All sales made for cash are to be reported to the first party as soon as made, and the second party is to remit to the first party the moneys received for each such sale, separately, as soon as made, less one-half of the net profit thereon, which the second party is to retain for his services.

" In case sales are made upon credit, title notes are to be taken from the purchaser on blanks furnished by the first party, which said notes are to be made payable to the order of the first party, and the payment of each such notes is to be guaranteed by the second party by a suitable endorsement on the back thereon.

" Such notes are to draw interest from the date thereof, and are to be forwarded to the first party as soon as received and, upon the payment of each of such notes, the first party is to remit to the second party one-half the profit of the sale represented by such note.

"All property consigned to the second party under this agreement is to be and remain the property of the first party, and subject to their order and inspection at all times; the second party is to properly house and care for the same; keep the same insured for the benefit of the first party, and to use all means necessary for the protection, preservation of all merchandise, and to pay the expense therefor, except the rent of store, and insurance on stock consigned by the party of the first part, which is to be borne equally by the parties hereto.

" It is expressly agreed that the party of the second part shall have no power or authority to. sell or dispose of any goods consigned to him under this agreement, except for cash, or the notes as hereinbefore provided.

" It is further mutually agreed by the parties hereto that said first party is to receive from said second party one-half of the net profits on Sharpless separator and Osborne machinery and supplies sold by said second party while this contract is in force, said one-half profits to be paid to said first party by second party as received.

"This agreement may be terminated at any time by the party of the first part; and upon such termination the second party is to deliver at the railroad station in Watkins, properly packed for shipment, all merchandise then on hand under this agreement.

"In Witness Whereof, the parties hereto have set their hands the day and year first above written.

> "JOHN CONKLIN & SON,
> "C. M. SHARPE."

The question is presented, were the John Conklin's Sons Company and C. M. Sharpe copartners at the time the note in question was given and the goods sold and delivered; and its solution depends upon the construction of the written agreement of July 7, 1906. This agreement recites that C. M. Sharpe is to retain one-half the net profits for his services.

The defendant C. M. Sharpe, who was the only witness sworn upon the trial, testified: "I am in the hardware business, and running in the name of C. M. Sharpe & Co. I had an arrangement with John Conklin & Son in writing prior to their incorporation. I continued the business with The John Conklin's Sons Company. There was no conversation as to the incorporation. The business continued the same. I bought and sold apples and other products. I was engaged in selling other goods in Watkins. I dealt in other goods on contract. I personally purchased these goods in question and they were shipped to me — they were either shipped to me or to the men I sold them to."

A partnership is, in one sense, a species of agency; and, where the parties to the contract do not themselves intend a partnership, it would seem, on principle, that one who is unknown to those who deal with others should be held only on the same ground that an undisclosed principal would be bound. If this principle be applied, then the plaintiff cannot recover of The John Conklin's Sons Company in this action. It does not appear that the plaintiff knew of the existence of the contract between John Conklin & Son and C. M. Sharpe at the time the note in question was given and the goods sold and delivered.

It seems to be well settled that, when a party is only interested in the profits of a business as a means of compensation for services rendered, or for money advanced, he is not a partner. Cassidy v. Hall, 97 N. Y. 159; Curry v. Fowler, 87 id. 33; Richardson v. Huglitt, 76 id. 55; Eager v. Crawford, 76 id. 97; Merchants National Bank v. Barnes, 32 App. Div. 92; Meehan v. Valentine, 145 U. S. 611; Wisotzkey v. Niagara Fire Insurance Co., 112 App. Div. 599.

It is urged on the part of the plaintiff that under the written agreement The John Conklin's Sons Company and C. M. Sharpe were partners as to third persons and hence as to the plaintiff.

As pointed out in Leggett v. Hyde, 58 N. Y. 272, 278, " The specific interest in profits which is to make a person a partner, must be a proprietary interest in them, existing before the division of them into shares, quoting with approval 3 Kent's Com. 25, note b, where it is said, The test of partnership is a community of profit; a specific interest in the profits, as profits, in contradistinction to a stipulated portion of the profits as a compensation for services."

This test is well established. Hackett v. Stanley, 115 N. Y. 625; McLewee v. Hall, 103 id. 639; Smith v. Bodine, 74 id. 33; First Natl. Bank v. Gallaudet, 122 id. 655.

I have not overlooked Manhattan Brass & Mfg. Co. v. Sears, 45 N. Y. 797; Ontario Bank v. Hennessey, 48 id. 545; Leggett v. Hyde, 58 id. 272, cited by plaintiff's counsel; but, in each of these cases, the parties held liable as partners had a proprietary interest in the profits, existing before the division of them into shares.

It appears from the evidence in this case that C. M. Sharpe was engaged in the hardware business, under the name and style of C. M. Sharpe & Co.; that Sharpe was the only person doing business under that name and that he continued to receive goods, under consignment from The John Conklin's Sons Company, after their incorporation, under the same contract made with John Conklin & Son. Sharpe, under the name and style of C. M. Sharpe & Co., was engaged

in buying and selling goods other than those consigned to him by The John Conklin's Sons Company.

The goods in question, and those in payment for which the note in question was given, were purchased by C. M. Sharpe under the name of C. M. Sharpe & Co. Sharpe sold some of the goods purchased of the plaintiff, taking notes in payment; and, in some instances, where sales were made from goods consigned by The John Conklin's Sons Company, as well as from goods purchased from the plaintiff, title notes were taken, payable to The John Conklin's Sons Company and C. M. Sharpe received credit upon his account with The John Conklin's Sons Company therefor. After Sharpe had delivered these notes to the John Conklin's Sons Company, he informed them that there were included in those notes goods that he had purchased of the plaintiff and Conklin replied, " Let them come along and when they come due, we will see to them."

It does not appear that the plaintiff, at the time of the sale and delivery of the goods, knew of the existence of the contract between The John Conklin's Sons Company and C. M. Sharpe, or that The John Conklin's Sons Company held itself out to the plaintiff or to the public as partner with C. M. Sharpe; and, therefore, it did not become liable upon that ground.   McLewee v. Hall, *supra.*

The conversation between Sharpe and Conklin, in which Conklin, referring to plaintiff's claim, said, " Let them come along and when they come due we will see to them," was not in the presence or hearing of the plaintiff and was long after the purchase of the goods and the execution and delivery of the note, and has no effect upon the legal liability of The John Conklin's Sons Company to the plaintiff.

When Sharpe sold the goods purchased of the plaintiff, the money he received therefor was his; and the fact that he used the same to pay his indebtedness to The John Conklin's Sons Company created no legal liability on its part to the plaintiff in this action.

At the opening of the case, the defendant's counsel moved to dismiss the complaint upon the ground that it did not state a cause of action against The John Conklin's Sons Company,

Surrogate's Court, Saratoga County, October, 1909. [Vol. 64.

for the reason that the complaint alleged that The John Conklin's Sons Company is a corporation and alleged a copartnership, as a basis of liability, between The John Conklin's Sons Company and C. M. Sharpe; that a corporation cannot become a copartner with an individual and cannot be bound as part of a copartnership and cannot incur debt or obligations except in its corporate name and through its corporate officers.

By consent of counsel decision upon the motion was reserved.

This motion is denied.

Plaintiff's complaint is dismissed as to The John Conklin's Sons Company, with costs.

Ordered accordingly.

---

In the Matter of the Judicial Settlement of the Account of Jesse Stiles as Executor of the Last Will and Testament of Loring F. Freeman, Deceased.

(Surrogate's Court, Saratoga County, October, 1909.)

Executors and administrators: Articles set apart and sustenance for survivor and children — Sustenance; Money for support of family: Debts and liabilities of the estate — Exhibition, establishment, allowance and enforcement of claims — Evidence — Claims by relatives and persons in confidential relations; Services to decedent.

Insane persons — Property and liabilities of incompetents — Liability of estate for debts and claims.

Wills — Interpretation and construction — Expenses of the estate, charges, advances and payment of debts and legacies — Rules and implications — Implied charges on land — Deficiency of personalty.

Where a claim is made by a married woman against the estate of her sister's deceased husband for the board of her sister during the incompetency of the decedent, and it appears that the board was furnished the sister under the latter's agreement to pay therefor, the claim should be allowed; but an additional claim for the care of the sister at another time where there was no agreement to pay therefor and under circumstances indicating that the services were intended at the time to be gratuitously performed should be disallowed.